**Nathan GOLLER, Plaintiff-Appellant,**

v.

**NATIONAL LIFE OF FLORIDA CORPORATION, a corporation and National Life Insurance Co. of Florida, a corporation, Defendants-Appellees.**

No. 74–3882.

United States Court of Appeals, Fifth Circuit.

July 1, 1977.

Nathan Goller, pro se.

O'Melveny & Myers, Los Angeles, Cal., Marion R. Shepard, Raymond Ehrlich, Jacksonville, Fla., for defendants-appellees.

Before WISDOM, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Plaintiff, the purchaser of 7,100 unregistered shares of the defendant's stock, claims that an alleged failure to comply with the registration requirements of the California Blue Sky Law entitles him to rescind the sale and recover his purchase price. The trial court concluded that no registration of defendant's stock, sold to plaintiff by a third party, was required under California law, and entered judgment in favor of the defendants. We affirm.

Defendant National Life of Florida is an insurance holding company incorporated in Florida. In November 1968 National Life held 56,800 shares of its own stock as treasury stock which it desired to sell. Two officers of the company traveled to New York to negotiate a sale of the shares to an underwriter. During those negotiations Mr. Eugene Cuthbertson expressed an interest in purchasing the stock for his own account. Cuthbertson already owned a substantial number of National Life shares and was an experienced trader in securities. A price of $10.50 a share was agreed upon and on December 23, 1968 the sale of the shares was concluded. The stock was not registered under the federal securities laws on the theory that the sale was an exempt private offering. See 15 U.S.C.A. § 77d(2). To insure the applicability of this exemption, National Life obtained from Cuthbertson an "investment letter" in which he stated that he was acquiring the stock for investment only, "with no present intention of selling, transferring, pledging or otherwise distributing the same."

This transaction was financed by Florida National Bank which provided 100% of the purchase price, $615,300. The stock, then trading at $11.50 to $12.00 a share, was pledged as collateral. In connection with the transaction, National Life purchased from Florida National Bank a $615,300 5% Certificate of Deposit, which was to remain outstanding so long as Cuthbertson continued to be indebted to the bank. National Life made oral representations to the bank that they would provide, in the words of a bank memorandum on the subject, "a letter of commitment . . . to repurchase [the pledged stock] for $620,000 should we have to foreclose." That letter was never executed.

Early the next month, January 1969, Cuthbertson sought to transfer all of the stock, except 13,000 shares, to four other persons, one of whom was the plaintiff, Nathan Goller, who were to pay $10.50 a share, Cuthbertson's purchase price. Since the stock certificates contained restrictive legends, the bank contacted National Life,

whose general counsel informed the bank that each of the four transferees would have to execute an investment letter similar to the one executed by Cuthbertson. He also informed Cuthbertson that he would have to procure the opinion of California counsel to the effect that this transfer was exempt from the requirements of the California Blue Sky Law. Cuthbertson obtained such a letter from plaintiff Goller, who is a California attorney. The substance of that opinion letter was that the sale by Cuthbertson was a separate transaction from the one in which Cuthbertson had originally acquired the stock, and that this second transaction was also exempt under California law. National Life thereupon instructed the bank to issue new certificates. Plaintiff Goller purchased 7,100 shares at $10.50 a share, and executed the required investment letter. Plaintiff paid the $74,550 purchase price directly to Florida National Bank, where it was used to reduce the outstanding balance on the loan to Cuthbertson. The other purchasers did the same.

Subsequently, contrary to plaintiff's understanding that the stock would be registered so as to make it freely tradeable, National Life withdrew the application to register the stock with the S.E.C. The stock remains restricted as "investment" stock. In April 1970 the plaintiff sought to rescind the sale and when National Life refused, he instituted the present action in the California state courts. The suit was removed to the federal district court in California and transferred to the Middle District of Florida, pursuant to 28 U.S.C.A. § 1404(a).

As a diversity case from California, California law controls. California, like every other state, regulates transactions in corporate securities. Every transaction must be "qualified" under the law, unless an exemption applies. A purchaser of stock sold in violation of the law may rescind the sale and recover his purchase price. Cal.Corp. Code § 25503 (West 1976 Supp.). Plaintiff contends here that there was a failure to comply with the registration provisions.

The registration statute creates two major classifications of transactions with different exemptions being relevant to each. Those transactions are the "issuer" and "nonissuer" types, and are defined by Cal. Corp.Code § 25011 (West 1976 Supp.).

"Nonissuer transaction" means any transaction not directly or indirectly for the benefit of the issuer. A transaction is indirectly for the benefit of the issuer if any portion of the purchase price of any securities involved in the transaction will be received indirectly by the issuer.

A sale in a nonissuer transaction is unlawful unless it has been qualified under the statute or is exempt. Cal.Corp.Code § 25130 (West 1976 Supp.). The law exempts any "sale of a security by the bona fide owner thereof for his own account if the sale (1) is not accompanied by the publication of any advertisement and (2) is not effected by or through a broker-dealer in a public offering." Cal.Corp.Code § 25104 (West 1976 Supp.). The parties agree that if the transaction here was a nonissuer transaction within the meaning of the statute, it was exempt and there is no violation of law on which to predicate a demand for rescission.

The question of whether this was a nonissuer transaction turns on whether it is a transaction "directly or indirectly for the benefit of the issuer," National Life. The district court found that the sale from National Life to Cuthbertson and the sale by Cuthbertson to plaintiff were separate and distinct transactions. It then held that the separate sale to plaintiff did not produce any benefit for National Life, thus making that sale a nonissuer transaction. As such, no registration was required under California law.

Plaintiff contends the transaction was in fact an issuer transaction. He first claims there was only one transaction between National Life and the group consisting of Cuthbertson, Goller, and the three other transferees, and that the finding to the contrary is incorrect. As a single transaction, the sale would obviously be for the benefit of National Life. This is a question

of fact, however, disturbable only if clearly erroneous. Fed.R.Civ.P. 52. An examination of the record, particularly the correspondence introduced by all parties as exhibits, convinces us that there is adequate evidentiary support for the district court's finding of two separate transactions. Cuthbertson made no references to any subsequent transfers by him in his letter to National Life confirming his intention to buy the 58,600 shares. The National Life attorneys instructed Florida National Bank, as its transfer agent, to handle the shares in a fashion thoroughly consistent with the idea that the original sale was concluded with Cuthbertson's payment of $615,300. The original investment letter executed by Cuthbertson referred to all of the 58,600 shares. While the evidence is not overwhelming in either direction, we cannot say that the trial court's findings were clearly erroneous.

■ Plaintiff next argues that the sale by Cuthbertson, even if it was a distinct transaction, was not a nonissuer transaction because it produced an indirect benefit for National Life in two ways. First, since National Life agreed to maintain a compensating balance in the form of a Certificate of Deposit, he claims that the sale to Goller which reduced Cuthbertson's loan balance provided an indirect benefit to National Life by freeing $74,550 of its funds for more lucrative investment. Second, he claims that National Life was liable on its oral promise to the Florida National Bank as a guarantor, in that it could have been forced to repurchase the collateral shares. Since his purchase decreased the number of shares that National Life might have had to repurchase, he again claims that there was a benefit.

The California statute finds an indirect benefit where "any portion of the purchase price . . . will be received indirectly by the issuer." The Rules of the California Corporations Commissioner amplify this provision by defining the statutory term "purchase price." They provide in 10 Cal. Admin.Code § 260.011 (1968) that

The term "purchase price" as used in Section 25011 of the Code includes only the specific consideration bargained for in return for the securities (which may include the making of a loan to the issuer); it does not include any remote, contingent or incidental benefit which may accrue to the issue, such as (without limitation) the inducement to a person to become or remain an employee of the issuer or perform other services for the issuer, even though a motive of the seller or the purchaser is to obtain such remote, contingent or incidental benefit for the issuer.

Here, none of Goller's $74,550 was received directly or indirectly by National Life. Even if some other benefit was received by the corporation, such as a reduction in the required compensating bank balance or a decrease in its potential suretyship liability, that is not the type of benefit which makes a transaction other than a nonissuer transaction under the statute. As one commentator has observed, "the thrust of the 'benefit' provision appears to imply an intent by the drafters that a finding of benefit to the issuer should be limited to situations where some type of monetary consideration flows to the issuer." *California Corporate Securities Law of 1968: The Issue of the Nonissuer,* 2 Loy.L.A.L.Rev. 87, 90 (1969).

The district court here held that the repurchase agreement of National Life was unenforceable under the Florida Statute of Frauds. Fla.Stat.Ann. § 725.01 (West 1969). Even if it were enforceable, however, the plaintiff could still not prevail in face of the apparently clear provisions of the California law defining indirect benefit.

The district court also held that, in any event, the opinion letter from the plaintiff as an attorney placed him *in pari delicto* so as to bar recovery. It is unnecessary for us to reach this point in order to conclude that plaintiff is not entitled to rescission under California law.

AFFIRMED.