**TECHNOMEDICAL LABS, INC., a Utah corporation, and, Connections Marketing Corp., a Nevada corporation (formerly TPI, Inc.), Plaintiffs and Appellants,**

v.

**UTAH SECURITIES DIVISION and, John Baldwin, its Director, Utah Department of Business Regulation, William E. Dunn, its Executive Director, and the Securities Advisory Board, Defendants and Respondents.**

No. 860107–CA.

Court of Appeals of Utah.

Oct. 15, 1987.

Lora C. Siegler, W. Sterling Mason, Jr., Salt Lake City, for plaintiffs and appellants.

David L. Wilkinson, State Atty. Gen., Mark C. Moench, Nicholas E. Hales, Asst. Atty. Gens., for defendants and respondents.

Before GARFF, GREENDWOOD and BENCH, JJ.

BENCH, Judge:

Plaintiffs appeal an order of defendant Department of Business Regulation ("Department") which denied effectiveness to plaintiffs' securities registration statements.[1] We affirm.

## FACTS

Plaintiffs, Technomedical Labs, Inc. and Connections Marketing Corp. (formerly TPI, Inc.), are publicly-held corporations. In early 1984, plaintiffs each organized a new corporation and thereafter acquired all of the stock of the new corporation, making each new corporation a wholly-owned subsidiary of the parent corporation.[2] Subsequent to the formation of the subsidiaries and after plaintiffs had acquired the stock thereof, plaintiffs' boards of directors voted to submit for shareholder vote a resolution that would allow distribution by plaintiffs of the subsidiaries' shares as partial liquidating dividends. Upon advice of counsel, both boards resolved to register the shares in compliance with the Utah Uniform Securities Act, Utah Code Ann. § 61–1–1 through 30 (1986) ("Utah Act").

On February 15, 1984, plaintiffs filed applications and registration statements with defendant Utah Securities Division ("Division") to register "by notification" the subsidiaries' stock. On February 17, 1984, the Division filed with the Department petitions and orders to show cause why stop orders should not be issued, pursuant to section 61–1–12, to deny effectiveness to plaintiffs' registration statements.

Each petition alleged three counts:

I. Plaintiffs were not "nonissuers" and therefore ineligible to register by notification.

II. Plaintiffs did not receive the securities in an exempt transaction and were therefore ineligible to register by notification.

III. The proposed transaction would tend to work a fraud upon purchasers or would so operate.

A pre-hearing conference was held on March 5, 1984, before an administrative law judge of the Department. In a pre-trial order, the administrative law judge dismissed Count III as too speculative. The administrative law judge accepted a stipulation as to facts and agreed to decide the issues based on the stipulated facts, the registration statements, and legal briefs.

The administrative law judge submitted his recommended findings of fact, conclusions of law, and order to the Department. The Department, with the approval of the Division's Securities Advisory Board, adopted the administrative law judge's findings and conclusions, and on April 17, 1984, issued stop orders denying the effectiveness of plaintiffs' registration statements. The Department found plaintiffs could not register the securities by notification since plaintiffs did not qualify as "nonissuers" within the statutory definition. The Department concluded that since the proposed transaction did not qualify as

---

1. The appeal is actually from a decision of the district court affirming the Department's order. When a lower court has reviewed an administrative decision and the court's judgment is challenged on appeal, we review the administrative decision just as if the appeal had come directly from the agency. *Bennion v. Utah State Bd. of Oil, Gas & Mining,* 675 P.2d 1135 (Utah 1983).

2. Five other corporations also engaged in the same activities as plaintiffs but only plaintiffs are appellants in the instant case.

nonissuer distributions, no determination as to Count II was necessary.

On June 12, 1984, plaintiffs filed a petition for review of the Department's order in Third District Court pursuant to section 61–1–23(1). In a memorandum decision dated January 30, 1985, the trial court affirmed the actions taken by the Department.

## REGISTRATION UNDER THE UTAH ACT

The Utah Act, enacted in 1963, is a substantial adoption of the Uniform Securities Act ("Uniform Act") approved by the National Conference of Commissioners on Uniform State Laws in 1956. To date, the Uniform Act has been adopted, in whole or in part, in 37 jurisdictions. *See* 7B U.L.A. 509 (1985). The purposes of securities acts in general are to prevent fraud and to encourage disclosure of information through registration, thereby protecting investors from the sale of fraudulent and worthless speculative securities. *Activator Supply Co., Inc. v. Wurth*, 239 Kan. 610, 722 P.2d 1081 (1986); *Lowery v. Ford Hill Inv. Co.*, 192 Colo. 125, 556 P.2d 1201 (1976); *State, Comm'r of Sec. v. Hawaii Market Center, Inc.*, 52 Haw. 642, 485 P.2d 105 (1971). "[S]ecurities laws are remedial in nature and should be broadly and liberally construed to give effect to the legislative purpose." *Payable Accounting Corp. v. McKinley*, 667 P.2d 15, 17–18 (Utah 1983).

Three forms of registration of securities are prescribed in the Utah Act: registration by qualification (section 61–1–10), registration by coordination (section 61–1–9), and registration by notification (section 61–1–8). Registration by qualification may be used to register any security and is therefore the method used when no other method of registration or exemption is available. This section enumerates a number of specific requirements and generally applies to non-federally registered issues of new companies. Registration by coordination correlates state registration with the Federal Securities Exchange Commission by permitting the federal prospectus to be substituted for the ordinary state application form and coordinating the time when both registrations become effective. The state disclosure requirements are minimal under registration by coordination since the federal requirements are quite exacting. Registration by notification is a streamlined procedure which allows for minimal, yet adequate, disclosure of information in the registration statement and automatic effectiveness of registration absent any affirmative action by the Division. Note, *The Uniform Securities Act*, 12 Stan. L. Rev. 105, 108 (1959); *see also*, Hill, *Some Comments on The Uniform Securities Act*, 55 Nw. U.L. Rev. 661, 675 (1961); Bennett, *Should Utah Adopt the New Uniform Securities Act?*, 5 Utah L.Rev. 471, 474 (1957).

Registration by notification is available in either of two situations. The first situation, specified in section 61–1–8(1)(a), clearly does not apply in the instant case.[3] The second situation is specified in section 61–1–8(1)(b) which provides as follows:

(1) The following securities may be registered by notification, whether or not they are also eligible for registration by coordination under § 61–1–9:

(b) any security ... registered for nonissuer distribution if any security of the same class has ever been registered under this chapter or a predecessor act, or the security being registered was originally issued pursuant to an exemption under this chapter or a predecessor act.

The question presented in the instant case is whether registration by notification is available to plaintiffs under subsection (1)(b). The question turns on whether plaintiffs can register, as nonissuers, the stock of their subsidiaries.

---

**3.** Registration under subsection (1)(a) is reserved for those high quality "blue chip" issues which are not federally registered where the issuing company has been in continuous operation for at least five years and satisfies certain earnings tests. *See* Draftsmen's Commentary to Uniform Securities Act § 302(a) in L. Loss and Cowett, *Blue Sky Law*, pp. 286–87 (1958); Bennett, *Securities Regulation in Utah: A Recap of History and the New Uniform Act*, 8 Utah L.Rev. 216, 228 (1963).

## STANDARD OF REVIEW

■ In *Utah Dep't of Admin. Serv. v. Public Serv. Comm'n*, 658 P.2d 601 (Utah 1983), the Utah Supreme Court outlined the three standards of review to be applied to decisions of administrative agencies generally. The standard which applies in the instant case is that of reasonableness or rationality. Included under this standard are agency decisions on "mixed questions of law and fact"[4] and agency interpretations of "special law." "Special law" is defined as "the operative provisions of the statutory law [the agency] is empowered to administer, especially those generalized terms that bespeak a legislative intent to delegate their interpretation to the responsible agency." *Id.* at 610. Deference is afforded to the expertise and experience of the agency in its interpretation of key provisions of the statute it is empowered to administer. Under this standard, the agency's decision will be set aside "only if it is outside 'the tolerable limits of reason,' or 'so unreasonable that it must be deemed capricious and arbitrary.'" *Id.* at 612 (quoting *Silver Beehive Telephone Co. v. Public Serv. Comm'n*, 30 Utah 2d 44, 46, 512 P.2d 1327, 1328 (1973); *Williams v. Public Serv. Comm'n*, 29 Utah 2d 9, 11, 504 P.2d 34, 36 (1972)).

## BURDEN OF PROOF

■ A preliminary question addressed by the parties on appeal concerns the burden of proving nonissuer status. Section 61–1–14.5 provides:

> In any proceeding under this chapter, civil, criminal, administrative, or judicial, the burden of proving an exemption under § 61–1–14 or an exception from a definition under § 61–1–13 is upon the person claiming the exemption or exception.

The Department held plaintiffs had the burden of proving they were nonissuers.[5] Section 61–1–13 defines both issuer ("any person who issues or proposes to issue any security") and nonissuer ("not directly or indirectly for the benefit of the issuer"). Plaintiffs contend that because nonissuer is defined, they are not claiming an exception from a definition. Such reading of the above-cited section is much too rigid. By seeking advantage of a less rigorous method of registration (notification), it was reasonable and rational for the Department to place on plaintiffs the burden of proving an exception from the definition of "issuer."

## WHO IS A NONISSUER?

■ "Nonissuer" is defined in section 61–1–13(12) as "not directly or indirectly for the benefit of the issuer." "Benefit" is not defined by the statute. It was stipulated that plaintiffs would receive no "cash consideration, remuneration, or commissions" from the proposed distribution. Hence, argue plaintiffs, they would not receive any benefit from the distribution.

Plaintiffs cite cases from California and Florida which hold a finding of benefit should be limited to situations where some type of monetary consideration flows to the issuer.[6] However, both California and Florida failed to adopt the Uniform Act. In fact, California has a general nonissuer transaction exemption not recommended by the Uniform Act. Cal.Corp.Code § 25011 (West 1977); *see also* Halloran, *Blue Sky Laws*, Corporate Law and Practice Course Handbook Series No. 534 p. 247 (1986). Furthermore, the cases cited by plaintiffs do not involve registration by notification

---

**4.** Plaintiffs allege the Department erred in making findings of fact which were actually incorrect conclusions of law. As the Supreme Court has noted, separating determinations of law and fact, especially within the types of decisions under the "reasonableness or rationality" standard, is not always conducive to proper judicial review. *Id.* at 610.

**5.** The trial court held the Department erred in so holding but that the error was not of such magnitude or weight to justify remand of the

matter since, irrespective of who had the burden, plaintiffs' arguments were unpersuasive.

**6.** *Coutts v. Grant*, 184 Cal. App. 2d 255, 7 Cal. Rptr. 431 (1960); *Goller v. National Life of Florida Corp.*, 554 F.2d 1349 (5th Cir.1977); *Cain v. Solomon*, 213 So.2d 35 (Fla.Dist.Ct.App.1986); Comment, *California Corporate Securities Law of 1968: The Issue of the Nonissuer*, 2 Loy.L.A.L. Rev. 87 (1969).

and therefore are not helpful to our analysis.

The Department found no reason to limit the definition of "benefit" to monetary benefit given the broad language of section 61-1-13(12) which specifically includes direct or *indirect* benefit. The Department relied upon two federal cases in support of that position. *Securities and Exch. Comm'n v. Datronics Engineers, Inc.*, 490 F.2d 250 (4th Cir.1973), *cert. den.*, 416 U.S. 937, 94 S.Ct. 1936, 40 L.Ed.2d 287 (1974); *Securities and Exchange Comm'n v. Harwyn Industries Corp.*, 326 F.Supp. 943 (S.D.N.Y.1971). In *Datronics* and *Harwyn,* the courts were asked to decide if the distribution of a subsidiary's unregistered shares as a dividend to the parent's shareholders constituted a "sale" requiring registration under the Federal Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77b. Whether a "sale" had occurred depended upon whether the distribution was "for value." Both courts held value would be gained by the creation of a public market. *Datronics,* 490 F.2d at 253–54; *Harwyn,* 326 F.Supp. at 952–53. Such value includes: 1) an enhanced ability to borrow; 2) an enhanced ability to raise equity; 3) the availability of a method of valuing assets; 4) an enhanced liquidity of assets; and 5) the prestige associated with publicly held companies. The Department concluded the term "value" in *Harwyn* and *Datronics* is substantially synonymous with "benefit" in the instant case.

The Department also found plaintiffs failed to qualify as nonissuers because, under the facts in the instant case, plaintiffs were "tantamount to co-issuers." The 1933 Act and federal case law define "issuer," under some circumstances, as both the company issuing the stock and control persons of that company. 15 U.S.C. § 77b(11); *Andrews v. Blue,* 489 F.2d 367 (10th Cir.1973); *Securities and Exch. Comm'n v. International Chem. Dev. Corp.,* 469 F.2d 20 (10th Cir.1972); *Securities and Exch. Comm'n v. National Bankers Life Ins. Co.,* 324 F.Supp. 189 (N.D.Tex. 1971). New Jersey, although adopting the Uniform Act, amended the definition of "nonissuer" to mean "secondary trading not involving the issuer of the securities or any person in a control relationship with the issuer." N.J. Stat.Ann. § 49:3–49(*o* ) (West 1970). Plaintiffs are clearly controlling "persons" of their subsidiaries. Plaintiffs also might be characterized as "underwriters" within the definition in the 1933 Act: "any person who has purchased from an issuer with a view to . . . the distribution of any security. . . ." 15 U.S.C. 77b(11); *see also G. Eugene England Found. v. First Fed. Corp,* 663 F.2d 988, 989 (10th Cir. 1973) ("An underwriter is one who has purchased stock from the issuer with an intent to resell to the public").

In summary, we find the Department's determination that plaintiffs do not qualify as "nonissuers" for the purpose of registration by notification to be both reasonable and rational.

## SUPPLEMENTAL ISSUES

█ Plaintiffs urge error in the Department's failure to determine Count II— whether the securities were originally issued by the subsidiaries under an exemption. Section 61–1–8(1)(b) permits registration by notification of securities "registered for nonissuer distribution [1] if any security of the same class has ever been registered . . . or [2] the security being registered was originally issued pursuant to an exemption. . . ." Count II of the Division's petition alleged the securities were not originally issued pursuant to an exemption (under condition [2] ). The Department ruled that a determination of the issue in Count II was unnecessary in view of the decision that plaintiffs were not nonissuers. We agree. Conditions [1] and [2] are to be considered only after it is determined that the securities in question are "registered for nonissuer distribution." Because plaintiffs are not nonissuers, consideration of whether the securities were originally issued under an exemption would be meaningless.

Plaintiffs also argue the Department failed to establish a "public interest" prior to issuing stop orders in violation of section 61–1–12(1) which provides "the executive

director may issue a stop order that denies effectiveness to ... any securities registration statement, if he finds that the order is in the public interest...." The Department found "the state has a valid interest in stopping the issuance of hundreds of thousands of public shares with the minimal disclosure inherent in registration by notification." We conclude the Department based its stop orders on a valid public interest.

Plaintiffs' other points on appeal are without merit.

## CONCLUSION

The Department's interpretation of the Utah Act and its rulings in the instant case fall within the bounds of reasonableness and rationality. Its order is therefore affirmed.

GARFF and GREENWOOD, JJ., concur.