**CAPITAL GENERAL CORPORATION, Plaintiff and Appellant,**

v.

**UTAH DEPARTMENT OF BUSINESS REGULATION, SECURITIES DIVISION, Defendant and Respondent.**

**No. 870567–CA.**

Court of Appeals of Utah.

July 3, 1989.

Certiorari Denied Sept. 12, 1989.

David H. Day (argued), Day & Barney, Murray, for plaintiff and appellant.

R. Paul Van Dam, State Atty. Gen., Stephen G. Schwendiman, Chief, William B. McKean, Mark J. Griffin (argued), Asst. Attys. Gen., Tax & Business Regulation Div., Salt Lake City, for defendant and respondent.

Before BENCH, GARFF and ORME, JJ.

## OPINION

ORME, Judge:

Capital General Corporation ("CGC") appeals the district court's affirmance of the Utah Securities Advisory Board's suspension of all secondary trading exemptions of Amenity, Inc. stock. The Board concluded that CGC had violated the Utah Uniform Securities Act by distributing 90,000 shares of Amenity, Inc. stock without registration. We affirm.

## THE UTAH UNIFORM SECURITIES ACT

The Utah Uniform Securities Act, Utah Code Ann. §§ 61–1–1 to –30 (1986), vests the Utah Securities Division with the authority to regulate the issuance and subsequent trading of securities within the state of Utah. One of the Act's primary purposes is to prevent fraudulent or inequitable securities transactions. *See, e.g., Technomedical Labs, Inc. v. Utah Sec. Div.,* 744 P.2d 320, 322 (Utah Ct.App.1987). This task is accomplished largely by requiring registration with the division, including the disclosure of information deemed pertinent to the investing public, before certain securities transactions may be legally consummated. *Id.* CGC challenges the division's authority to require registration of the Amenity, Inc. shares at issue here, which CGC asserts were merely "given away."

## FACTS

On January 7, 1986, Amenity, Inc. was incorporated with capitalization of 100,000,000 shares, each having a one-tenth of a cent par value. On January 8, 1986, 1,000,000 shares of Amenity, Inc. stock were issued to appellant CGC, a financial consulting firm, for $2000. Shortly thereafter, CGC distributed a total of 90,000 of those shares to approximately 900 of its clients, business associates, and other contacts. CGC claims it distributed the Amenity, Inc. shares to create and maintain goodwill among clients and contacts, and it is undisputed that CGC did not receive any monetary or other direct financial consideration from those receiving the stock.

After the distribution, CGC and its distributees held 100% of Amenity, Inc.'s outstanding stock; CGC held 91%, and the distributees held the remaining 9%. From all that appears, Amenity, Inc. had no actual business function at this time and its sole asset was the $2000 CGC had paid for the 1,000,000 shares. Shortly thereafter, Amenity, Inc. was acquired by another company. CGC was instrumental in this acquisition and received $25,000 for its efforts.

On June 5, 1986, the Utah Securities Division filed a petition seeking the suspension of all possible secondary trading exemptions for Amenity, Inc. stock.[1] The

---

1. The primary effect of such an order is to force each party holding the affected shares to register with the division prior to any further trading. Absent such an order, holders of shares

petition alleged that CGC distributed the 90,000 shares of Amenity, Inc. stock in violation of Utah Code Ann. § 61-1-7 (1986).

An evidentiary hearing was held before an administrative law judge, who denied the petition and ruled that the Act's registration requirements did not apply to CGC's distribution of the Amenity, Inc. stock. The division sought further administrative review of this matter, and a second evidentiary hearing was subsequently held before the Utah Securities Advisory Board. After the hearing, the Board rejected the administrative law judge's recommended conclusion that the Act did not apply, instead concluding that CGC's distribution of the 90,000 shares was indeed covered by the Act and, without registration, violated Utah Code Ann. § 61-1-7 (1986). Accordingly, the Board issued an order of suspension pursuant to Utah Code Ann. § 61-1-14(3) (1986). CGC filed a petition in the district court seeking reversal of the Board's order. Following the district court's affirmance, CGC brought this appeal.

This case presents three issues of apparent first impression in Utah: First, whether the division may require registration under the Act where securities are distributed to others without cost; second, whether the Board's conclusion that CGC's distribution was not a "good faith gift" under Utah Code Ann. § 61-1-13(15)(d)(i) (1986) is reasonable and rational; and third, whether Utah Code Ann. § 61-1-14(3) (1986) provides a legal basis for the Board's order of suspension.

## STANDARD OF REVIEW

CGC brings this appeal, which technically is from the district court's affirmance of the Board's order. However, we essential-ly disregard the district court's disposition and "review the administrative decision just as if the appeal had come directly from the agency."[2] *Technomedical Labs*, 744 P.2d at 321 n. 1. *See also Bennion v. Utah State Bd. of Oil, Gas & Mining*, 675 P.2d 1135, 1139 (Utah 1983).

The questions presented here are mixed questions of law and fact or involve the interpretation of "special law." *See, e.g., Utah Dep't of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 610 (Utah 1983); *Technomedical Labs*, 744 P.2d at 323. Moreover, the relevant concepts and terms, treated in the next three sections of this opinion, are ones with which the Board has both "technical expertise" and "more extensive experience." *Administrative Services*, 658 P.2d at 610. Thus, we review the Board's decision for reasonableness and rationality. *Hurley v. Board of Review*, 767 P.2d 524, 527 (Utah 1988). *See Taylor v. Utah State Training School*, 775 P.2d 432, (Utah Ct.App.1989) ("The more likely it is that agency expertise will assist in resolving an issue, the more deference courts should give to the agency's resolution."). Furthermore, it is appropriate to broadly construe the provisions of the Act to effectuate the legislative intention behind it. *See, e.g., Technomedical Labs*, 744 P.2d at 322.

## DISPOSITION FOR VALUE

■ CGC first argues that the division's authority to require registration of stocks is limited by Utah Code Ann. § 61-1-7 (1986), which provides, with our emphasis, that "[i]t is unlawful for any person to *offer or sell* any security in this state unless it is registered ... or the security or transaction is exempted under § 61-1-14." Thus, we must determine if CGC's disposi-

---

may avoid registration and trade their shares freely if a secondary exemption can be claimed. *See* Utah Code Ann. § 61-1-14 (1986).

**2.** We have previously noted our disapproval of this inefficient, two-tiered approach to judicial review of agency decisions, where first the district court and then an appellate court review an agency decision "on the record." *See Davis*

*County v. Clearfield City*, 756 P.2d 704, 710 n. 8 (Utah Ct.App.1988). The Utah Administrative Procedures Act wisely avoids this duplicative procedure. *Id. See* Utah Code Ann. §§ 63-46b-15 to -17 (1988). The Act, however, does not apply to this or other administrative proceedings commenced before the effective date of the Act. *See* Utah Code Ann. § 63-46b-22(2) (1988).

tion of the 90,000 shares was an "offer or sale" of Amenity, Inc. securities.

We first turn to § 61–1–13(15)(a), which provides that an "offer or sale" includes the "disposition of ... a security for value." CGC essentially argues that the concept "for value" mandates a direct exchange of economic considerations between the transferor and transferee in order for the transaction to qualify as an "offer or sale" under § 61–1–7. Hence, since CGC received nothing from its transferees, CGC claims its disposition of the Amenity, Inc. stock was not an "offer or sale." The Board, however, took a more liberal view of the phrase "for value" and held § 61–1–7 did in fact apply. We must determine whether the Board's decision is within the bounds of reason and rationality.

In *Technomedical Labs,* 744 P.2d at 324, this court affirmed the Board's interpretation and application of the term "benefit" as it appears in § 61–1–13(12), implicitly accepting the Board's equating "benefit" with "value."

> The [division] found no reason to limit the definition of "benefit" to monetary benefit.... The [division] relied upon two federal cases in support of that position. *Securities and Exch. Comm'n v. Datronics Engineers, Inc.,* 490 F.2d 250 (4th Cir.1973), *cert. denied,* 416 U.S. 937, 94 S.Ct. 1936, 40 L.Ed.2d 287 (1974); *Securities and Exchange Comm'n v. Harwyn Industries Corp.,* 326 F.Supp. 943 (S.D.N.Y.1971). In *Datronics* and *Harwyn,* the courts were asked to decide if the distribution of a subsidiary's unregistered shares as a dividend to the parent's shareholders constituted a "sale" requiring registration under the Federal Securities Act of 1933....

> Whether a "sale" had occurred depended upon whether the distribution was "for value." Both courts held value would be gained by the creation of a public market.... Such value includes: 1) an enhanced ability to borrow; 2) an enhanced ability to raise equity; 3) the availability of a method of valuing assets; 4) an enhanced liquidity of assets; and 5) the prestige associated with publicly held companies. The [division] concluded the term "value" in *Harwyn* and *Datronics* is substantially synonymous with "benefit" in the instant case.

*Id.*

Especially in light of the above, the Board's determination that CGC's disposition of the Amenity, Inc. stock was "for value" is reasonable and rational. In this regard, it was appropriate for the Board to consider both the intended and unintended consequences of the disposition. The evidence before the Board clearly establishes that, prior to the disposition, CGC held $2000 worth of stock in Amenity, Inc., a privately held company engaged in no apparent business operations. By "giving away" 90,000 shares (or 9% of its total holdings), CGC essentially transformed Amenity, Inc. into a publicly held company, ripe for acquisition, in which it held most of the stock. As we observed in *Technomedical Labs,* "value" can include enhanced abilities to borrow, raise capital, and other general benefits associated with publicly held companies, all of which CGC received through the disposition. We agree these economic benefits render the disposition "for value" under § 61–1–13(15)(a), even though those benefits flowed indirectly from the marketplace rather than directly from the transferees.[3]

---

**3.** CGC cites *Andrews v. Chase,* 89 Utah 51, 49 P.2d 938 (1935), as support for the proposition that a "gift" of securities is not a "sale" for purposes of § 61–1–7. We do not agree with this assertion for at least two reasons. First, *Andrews* is of extremely doubtful precedential value given the subsequent amendments to Utah's securities laws. For example, the Act now explicitly provides that a "good faith gift" is not a "sale," implying that any gift other than one made in good faith is a "sale." Even more compelling is that the *Andrews* holding would most likely be different if the case arose under the amended Act, which now provides that "a purported gift of assessable stock," as that distributed in *Andrews,* is a "sale" and subject to § 61–1–7. *See* Utah Code Ann. § 61–1–13(15)(c)(ii) (1986). Second, even if *Andrews* has any remaining precedential value under the amended Act, the present facts are distinguishable and would compel a different result. In *Andrews,* the gift of stock was made with the mere *expectation* of future, speculative benefits in the form of assessments the donees would voluntarily choose to pay. *See Andrews,*

## GOOD FAITH GIFT

■ CGC additionally argues that even if the disposition was "for value" in some broad sense, still § 61–1–7 was not violated because the disposition was a "good faith gift" under § 61–1–13(15)(d)(i). At all stages of this dispute, including on appeal, CGC bears the burden to prove its entitlement to the "good faith gift" exception to the definition of "offer or sale." Utah Code Ann. § 61–1–14.5 (1986). *See also Technomedical Labs,* 744 P.2d at 323. The Board determined CGC failed to meet this burden and consequently held the disposition was not a "good faith gift." This conclusion was largely based on the Board's finding that through the disposition CGC intended to circumvent the Act's registration requirements.[4] The conclusion finds further support in the fact that CGC's veiled but fairly obvious purpose was to advance its own economic objectives rather than to make a gift for reasons of simple generosity.

While perhaps CGC's stated intention to gratuitously benefit the distributees without circumventing the Act is not entirely void of candor, it is easy for us to see how the Board would reject the idea and instead conclude that CGC's actual purpose in making the distribution included an intent to convert a private company into a public company without registration. The effect of this transformation, in addition to circumventing the Act's registration requirements, was to greatly enhance the value of the significant block of Amenity, Inc.'s outstanding stock which CGC continued to hold. Additional evidence of CGC's economic self-interest and its lack of gratuitous intentions is shown by the fact that CGC similarly converted at least thirty other private companies into public companies using the same method employed here.

Like Amenity, Inc., at least three of these companies were then acquired by other companies, resulting in substantial profits for CGC.

We agree that CGC has failed to prove its entitlement to the "good faith gift" exception, and the Board's conclusion that CGC's disposition was not a "good faith gift" is reasonable and rational. Accordingly, because the disposition was "for value," we affirm the Board's conclusion that CGC violated § 61–1–7 by failing to register its Amenity, Inc. stock before the distribution.

## STATUTORY BASIS FOR THE BOARD'S ORDER

■ CGC's final contention is that § 61–1–14(3), which authorizes the Board to deny or suspend certain secondary trading exemptions, does not authorize the order of suspension challenged here. CGC argues that since it is not claiming any secondary trading exemption, there is no basis for the suspension and the Board erred in issuing the order in reliance on § 61–1–14(3). However, even if CGC is technically correct in its assertion, we would hold it harmless error.

We held above that CGC violated § 61–1–7 in distributing the Amenity, Inc. shares without registration. The Board has the power to remedy a violation of § 61–1–7 under § 61–1–20, which includes the power to issue an order of similar legal effect to the order involved here. Given the procedural history of this case, § 61–1–20 does not extend any additional or different procedural or substantive safeguards from those actually employed by the Board. Accordingly, we see no prejudice to CGC even if the Board issued its order citing a technically inapplicable provi-

---

49 P.2d at 942. Here, the disposition of the Amenity, Inc. shares created an immediate, actual benefit to CGC in that it now owned substantial shares in a public company which, but for the disposition, would be a private company.

**4.** Typically, a private company wishing to "go public" must comply with one of three registration procedures. *See* Utah Code Ann. §§ 61–1–8 to –10 (1986).

sion of the Act.[5]

We affirm.

BENCH and GARFF, JJ., concur.

---

**5.** Since CGC is the only party challenging the order on this appeal, we have no occasion to determine if the order was properly issued as to the distributees holding the remaining 9% of Amenity, Inc. stock.