**CITY OF BARNUM, Minnesota Pollution Control Agency, Appellants,**

v.

**COUNTY OF CARLTON, et al., Respondents.**

No. C3–85–1419.

Court of Appeals of Minnesota.

May 13, 1986.

Review Granted July 16, 1986.

Marvin Ketola, Co. Atty., Carlton, Raymond L. Erickson, Richard J. Leighton, Hanft, Fride, O'Brien, Harries & Bujold, Duluth, for Carlton County and County Board of Carlton.

Heard, considered, and decided by WOZNIAK, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

WOZNIAK, Judge.

The City of Barnum appeals the district court's decision denying its request for a writ of mandamus compelling Carlton County to issue a conditional use permit to build a new wastewater treatment facility. The City of Barnum contends that Carlton County acted arbitrarily and capriciously in denying its application for a conditional use permit. We agree, and reverse the order of the district court.

## FACTS

The City of Barnum is a small community of about 490 located in Carlton County, Minnesota. The city's annual operating budget is about $90,000. Barnum's existing sewage treatment plant, built in 1963, is a mechanical plant called an activated sludge. The city has consistently failed to meet applicable state and federal pollution control standards.

In 1979 Barnum obtained a grant from the Minnesota Pollution Control Agency (MPCA) to prepare a study to come up with a solution to its sewage treatment problems. The study, called a Facility Plan, was completed in 1980. The plan identified the most cost-effective and safe plan to be the construction of stabilization ponds with a controlled discharge to a small stream called Gillespie Brook, which flows into the Kettle River. The proposed site for the plant lies about four miles outside Barnum city limits, but within Carlton County.

Harry L. Newby, Jr., Newby, Korman, Lingren & Newby, Ltd., Cloquet, for City of Barnum.

Hubert H. Humphrey, III, Atty. Gen., Alan R. Mitchell, Spec. Asst. Atty. Gen., Roseville, for Minnesota Pollution Control Agency.

A stabilization pond system consists of one or more primary ponds and one or more secondary ponds. It is basically a man-made facility in which the natural purification of wastewater occurs under controlled conditions. Wastewater is initially pumped into the primary cell, where most of the treatment occurs, and then periodically transferred in small amounts to the secondary cell, where additional treatment occurs.

The proposed Barnum system will consist of two primary cells and one secondary cell, each cell about 5.6 acres in size. The system is typical of those used by small communities like Barnum. The system will hold over 30,000,000 gallons of water at a depth of about six feet and treat an average daily flow of 110,000 gallons. The ponds will be sealed to prevent the possibility of groundwater contamination.

When a pond system becomes full of water, the water must be removed, either by discharging to a body of water or spraying on nearby land. The proposed Barnum ponds would discharge into Gillespie Brook only twice a year, once in the spring and once in the fall. No discharge can be made without MPCA approval, which is necessary to insure that the water meets applicable standards and that the discharge is necessary. Barnum will have to meet the most stringent effluent limits available before it will be permitted to discharge from its secondary pond.

Because the proposed plant will not be discharging into a downstream lake, no phosphorus limitation will be necessary. Phosphorus, which is found in all wastewater, can act as a limiting nutrient causing accelerated vegetation growth in a lake. When this vegetation dies, it begins to decompose and actually fill in the lake, a process known as eutrophication. The MPCA has therefore imposed restrictions on the levels of phosphorus that can be discharged into a lake. However, when phosphorus is discharged into streams, the moving water prevents the phosphorus from causing accelerated plant growth in a particular area of water.

The existing plant's effluent is discharged into the Moose Horn River upstream from Hanging Horn Lake. The plant is the only point source of phosphorus to the lake. According to the MPCA, the concentration of phosphorus in Hanging Horn Lake puts it in the eutrophic category. The MPCA has determined that a phosphorus limitation on the proposed plant's discharge to Gillespie Brook will not be necessary because there are no downstream lakes along Gillespie Brook.

There are about 250 pond systems in Minnesota. About 50% of Minnesota's municipalities use stabilization ponds. The ponds are generally inexpensive to build and cheaper to operate than mechanical plants.

One disadvantage of stabilization ponds is the possibility that odors may arise for a few days during the spring as the ice melts and the ponds go from an anaerobic to an aerobic condition. To address the concern about odors, the MPCA requires ponds to be located at least one-quarter mile from the nearest residence. In this case, the nearest residence to the proposed pond site is over one-quarter mile away, to the northwest along County Road 135.

The Facility Plan found that:

The environment is expected to continue to slowly deteriorate without the project. Normal development would continue in the planning area, imposing even more of a load to the now undercapacitated treatment facilities.

Without the project, the Moose Horn River would continue to receive an effluent discharge from Barnum's wastewater treatment works which could not be of sufficient quality to consistently meet NPDES Permit requirements. Overloaded and shock conditions would continue and operational problems would increase in frequency thereby affecting environmental conditions. This could have

adverse effects on future land use, property value, development, and recreational potential of areas affected by such conditions.

When the facility plan was complete, the MPCA prepared an environmental assessment, which evaluates the environmental impact of the most cost-effective project and, to a lesser extent, the alternative projects. The environmental assessment on the Barnum project concluded that "[t]here is no significant major difference in the environmental impacts of the various alternatives."

After completion of the environmental assessment, the matter was referred to the EPA for their review of environmental impact. The EPA issued a Finding of No Significant Impact regarding the Barnum project.

Barnum requested that Carlton County issue a conditional use permit to enable the city to build the new plant. In 1980, the Carlton County Board issued a conditional use permit to Barnum. However, the permit expired because the city was unable to obtain a construction grant and was therefore unable to commence construction within one year.

In 1984, the MPCA placed Barnum on its Municipal Project List for a construction grant in the upcoming year. The city hoped to implement the same Facility Plan it had proposed in 1980 and applied for another conditional use permit. The Carlton County Zoning Officer approved the plan and recommended approval of the permit. He stated in his memorandum to the planning commission, "Due to the isolation of the ponds, I do not feel they should have an adverse effect on properties in the area nor the future development of the area." The Carlton County Planning Commission unanimously recommended approval of the permit on January 2, 1985.

On January 30, 1985, the Carlton County Board held an informational meeting to hear public concerns surrounding the proposed treatment facility. The board kept no written record of what transpired at this meeting. Two individuals prepared written summaries from individual notes. Several property owners voiced fears about diminished property values, odor problems, contaminated shallow wells, phosphorous levels, and other effects of the discharge on neighboring streams and lakes. These individuals stated that the wells in the area were shallow, but no one explained where these wells were located or how shallow they were. They voiced concerns about the possibility of odors from the plant, but did not state how close their properties were to the proposed site. Some complained about a possible reduction in property values, but no one offered any evidence regarding property values in the area of the proposed site or in any other area where stabilization ponds had been built. Two residents of the Hanging Horn Lake area spoke in favor of the project. None of the project's opponents presented scientific, technical, or statistical evidence to substantiate their concerns.

Two petitions were presented to the county board: one from opponents with about 75 signatures and one with about 55 signatures from residents of the Hanging Horn Lake area supporting the project.

In contrast, Barnum offered extensive evidence that the treatment plant poses no health or safety threat to Carlton County. Barnum's Facility Plan contained extensive evidence showing that the plan was the most cost-effective and that there would be no adverse, long-term environmental impact. Both the MPCA and the EPA approved the plan, stating that it satisfied state and federal environmental standards. Two MPCA employees spoke at the meeting in response to the property owners' concerns. They addressed questions regarding the site and generally discussed the effluent limitations assigned to Gillespie Brook and Moosehorn River and why those limitations were assigned.

The Carlton County Board voted to deny the conditional use permit. The minutes of

the county board meeting contain no findings of fact explaining the decision. The only section of the minutes giving any reason for the decision states in its entirety:

> Motion by Lippo, second by Hilinski to deny Application for Conditional Use No. 11–84 by the City of Barnum to construct and operate sewage stabilization ponds as *it appears that it would substantially diminish and impair property values within the immediate vicinity of the ponds.* Motion carried with Commissioners Hilinski, Lippo, and LaVoy voting aye. Commissioner Baresh voted nay.

(Emphasis added.) The language "substantially diminish and impair property values within the immediate vicinity" comes directly from section 20, subdivision 4 of the zoning ordinance.

The county board issued its order denying the permit the same day. No reasons for the denial were stated in the order.

On February 26, 1985, the City of Barnum filed a Petition for Writ of Mandamus and Complaint in District Court alleging that Carlton County had acted arbitrarily and capriciously and seeking a writ of mandamus to compel the issuance of the conditional use permit or, in the alternative, a declaratory judgment reversing the county's decision.

At trial, the city presented nine witnesses. The county presented two. Barnum offered substantial evidence to buttress its claims, including evidence that its plan would not impair property values. A Carlton County assessor who assesses properties in the Barnum and Moose Lake areas testified that he had never reduced the values of property located along the Moosehorn River south of Barnum on the basis of the wastewater which is discharged into the river.

The first of the two witnesses called by the county was John Pegors, the MPCA Regional Director. Mr. Pegors testified about the possible environmental consequences of the plan. Mr. Pegors acknowl-

edged, however, that the city's expert witnesses were the acknowledged experts on stabilization ponds in Minnesota. The second witness, an opponent of the project who owns property about five miles downstream from the proposed plant, testified that he feared the treatment facility would harm the environment and impair property values. Almost no evidence was produced to support these witnesses' contentions. The county called no witnesses to testify about the potential impact of the ponds on property values. They called no person in the decisionmaking chain to provide an explanation for the rationale behind the county's decision.

The trial court upheld the county board's decision, finding that the board did not act in an arbitrary or capricious manner, and denied the city's request for a writ of mandamus or declaratory and injunctive relief. The City of Barnum now appeals.

## ISSUE

Did the trial court err by refusing to grant a writ of mandamus requiring Carlton County to issue a conditional use permit allowing the City of Barnum to construct a sewage treatment plant?

## ANALYSIS

The City of Barnum contends that the trial court erred in finding that Carlton County acted properly in denying the conditional use permit. The city maintains that the county board acted arbitrarily and capriciously by basing its decision solely on the unsubstantiated fears of property owners.

In reviewing decisions by local governing bodies in zoning matters, this court applies the same scope of review as that applied in reviewing state agency decisions. Thus, we must make an independent examination of the county board's decision "without according any special deference to the same review conducted by the trial court."

*Northwestern College v. City of Arden Hills,* 281 N.W.2d 865, 868 (Minn.1979) (quoting *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977)).

A local governing body generally has broad discretion in zoning matters, particularly when it enacts a zoning ordinance or rezones. In these situations, the zoning authority is acting in its legislative capacity. However, when the zoning authority considers a conditional use permit, it acts in a quasi-judicial capacity and is subject to more extensive judicial oversight. *Honn v. City of Coon Rapids,* 313 N.W.2d 409, 416–17 (Minn.1981); *Odell v. City of Egan,* 348 N.W.2d 792, 796 (Minn.Ct.App.1984).

The appropriate standard of review in all zoning cases is "whether the zoning authority's action was reasonable." *Honn,* 313 N.W.2d at 416–17. Reasonableness is measured by examining whether the standards in the ordinance have been satisfied. *White Bear Docking & Storage, Inc. v. City of White Bear Lake,* 324 N.W.2d 174, 176 (Minn.1982).

Thus, we must consider whether the Carlton County Board acted reasonably in denying Barnum a conditional use permit. Our role is to examine the record to determine whether the reasons given by the county board were legally sufficient and whether they had a factual basis. *C.R. Investments, Inc. v. Village of Shoreview,* 304 N.W.2d 320, 325 (Minn.1981); *Curtis Oil v. City of North Branch,* 364 N.W.2d 880, 884 (Minn.Ct.App.1985). The record includes relevant evidence introduced at trial. *Honn,* 313 N.W.2d at 416.

Under section 20, subdivision 4 of the Zoning Ordinance of Carlton County, a conditional use permit shall not be approved unless the County Planning Commission finds:

That the conditional use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purpose already permitted, nor substan-

tially diminish and impair property values within the immediate vicinity.

The county board maintains that its decision to deny the conditional use permit was rationally based upon concerns that the project would "diminish and impair property values." Barnum contends that the county acted unreasonably in denying the permit because the board had no evidence, findings, or reasons to substantiate its decision. We agree.

In *Honn,* the supreme court held that a local zoning authority must:

*at a minimum,* have the reasons for its decision recorded or reduced to writing and in more than just a conclusory fashion. By failing to do so, it runs the risk of not having its decision sustained.

*Id.* at 416 (emphasis added). Here, the county board has failed to provide the minimal reasons required by the supreme court.

The board's statement that "it appears that" the treatment facility "would substantially diminish and impair property values" is an insufficient explanation for its decision. The board gives no factual basis for its findings. It merely recites the language of the zoning ordinance. It does not even state that the board expressly determined that property values would be impaired; it merely states that "*it appears that*" they would be. This failure by the county board to make sufficient findings in support of its decision makes this court's task highly impractical. There is no way to determine from the record before this court what the county board's thinking was when it denied the conditional use permit. *See Curtis Oil,* 364 N.W.2d at 883.

The county board argues on appeal that its decision was based upon concerns aired by property owners at the January 30, 1985 meeting. However, though these sentiments may be weighed in a zoning decision, "they may not be the sole basis for granting or denying a given permit." *Northwestern College,* 281 N.W.2d at 869. The Minnesota Supreme Court explained in *Chanhassen Estates Residents Associa-*

*tion v. City of Chanhassen,* 342 N.W.2d 335 (Minn.1984), that:

A conditional or special use permit may be denied for reasons relating to public health, safety, and general welfare. * * * Nevertheless, denial of a conditional use must be based on something more concrete than neighborhood opposition and expressions of concern for public safety and welfare.

*Id.* at 340.

Similarly, in *Minnetonka Congregation of Jehovah's Witnesses, Inc. v. Svee,* 226 N.W.2d 306 (Minn.1975), the supreme court stated:

[W]hile we do *not* hold that property owners adjacent to the proposed use do not have a right to object and to be heard, the *general* objections of the opponents of the application [for a conditional use permit] are not competent evidence to support such a finding.

*Id.* at 309 (emphasis in original).

Aside from the protests of its constituents, the Carlton County Board had no legally sufficient basis to deny Barnum a conditional use permit. The sum of all of the credible evidence in the record, including the evidence presented before the district court, was that the Barnum project had been extensively reviewed and that it was an environmentally sound project that would have no detrimental effect on property values in the area. The county presented no concrete evidence to the contrary. Its decision appears to have been merely a response to public opposition. This is an insufficient basis upon which to deny a conditional use permit. A county must rely on facts, and not mere emotion or local opinion, in making such a decision.

Pond systems are in operation at Isle, Cosmos, and Zimmerman, three communities about the same size as Barnum, and there is a system at nearby Moose Lake which is much larger than the proposed Barnum system. The county made no findings that property values have been impaired, that groundwater contamination has been a problem, or that any of the other concerns raised at the January 30 meeting have a basis in fact, at these or any of the other 250 pond systems in Minnesota.

■ The county board's action was patently unfair. The board acted unreasonably and without justification. In situations where a governing body acts arbitrarily, capriciously or unreasonably, a writ of mandamus shall issue to remedy the unjust result. *Curry v. Young,* 285 Minn. 387, 394, 173 N.W.2d 410, 414 (1969). *See also Honn,* 313 N.W.2d at 416 ("the form of the action by which the procedure is initiated need [not] always be a declaratory action. Mandamus has its place * * *."). Since the county board's action was arbitrary and capricious, the trial court erred by not issuing a writ of mandamus requiring the board to issue a conditional use permit.

Remanding this case for findings would be unfair to appellants because of the risk that any findings made by the county board at this late date would merely rationalize their previous decision. *See Curtis Oil,* 364 N.W.2d at 883; *Reserve Mining Co. v. Minnesota Pollution Control Agency,* 364 N.W.2d 411, 415 (Minn.Ct.App. 1985), *pet. for rev. dismissed* (Minn. June 10, 1985). We therefore reverse the trial court and remand with instructions to issue the writ of mandamus ordering the county board to issue the conditional use permit.

## DECISION

The Carlton County Board arbitrarily denied the City of Barnum's request for a conditional use permit. Therefore, the trial court erred in refusing to issue a writ of mandamus requiring the county board to grant the permit.

Reversed and remanded.