**DAVIS COUNTY, a body politic of the State of Utah, and Victor Smith, Plaintiffs and Respondents,**

v.

**CLEARFIELD CITY, a municipal corporation of the State of Utah, and the Clearfield City Planning Commission, Defendants and Appellants.**

No. 860343–CA.

Court of Appeals of Utah.

May 13, 1988.

Craig S. Cook (argued), Salt Lake City, for Clearfield City.

Gerald E. Hess (argued), Chief Deputy Davis Co. Atty., Farmington, for Davis County.

Before GREENWOOD, BILLINGS and ORME, JJ.

## OPINION

ORME, Judge:

Clearfield City seeks reversal of a district court order issuing an extraordinary writ in the nature of a writ of mandamus. The writ ordered Clearfield City to issue Davis County a conditional use permit for a group home. We affirm.

## FACTS

On June 25, 1984, Davis County made application with the Clearfield City Planning Commission for a conditional use permit to operate a residential treatment program for adolescents and adults suffering from substance abuse. The proposed site was adjacent to another building operated by Davis County, known as the Addiction Recovery Center ("ARC"). The sale of the property to Davis County by Victor Smith had been made subject to approval of the County's plans by Clearfield City.

A public hearing to consider the permit was held on July 18 by the Clearfield City Planning Commission. A number of citizens attended and raised concerns about parking, an increased crime rate, and the reduction of property values in the vicinity. Concerns were also voiced that the use of the property for a group home would be incompatible with the "residential" nature of the surrounding area. The commission denied the application in a three to one vote, refusing to give any reason for its decision. As required by city ordinance, Davis County appealed the decision to the Clearfield City Council. An inconclusive hearing was held on September 11, with further consideration deferred to October 9.

The Clearfield City Council met in a "pre-meeting" on October 9 and discussed the conditional use permit. The Clearfield City Manager presented two maps to the City Council at the pre-meeting which were not presented at any public hearing. One map identified "neighborhoods" where the im-

pact would be greatest if another group home was permitted. Based on the City Manager's assessment, the two facilities combined would constitute 11% of the neighborhood he identified. The other map showed various city zones and the location of basic social services within a one mile diameter of the proposed site. These services included the Pioneer School for the mentally handicapped, the ARC facility, the Clearfield Convalescent Center, and the Division of Family Services Center.

In the formal portion of the October 9 meeting, Councilwoman Reed made a motion to uphold the Planning Commission's decision and to deny the appeal for a conditional use permit. The motion carried.[1] Davis County then filed suit in district court, claiming that the actions of the City Council and the Planning Commission were unconstitutional and asking the court to issue a writ of mandamus requiring Clearfield to grant the conditional use permit. The case was heard on April 24 and 25, 1986 and the trial court subsequently issued a memorandum decision ruling in favor of Davis County and authorizing a writ of mandamus requiring Clearfield City to issue the permit.

The trial court found that the city's action in denying the permit was arbitrary, capricious, discriminatory, and without substantial basis in fact. The court upheld the Clearfield City zoning ordinance as constitutional, but found that the city unconstitutionally applied it because there was no rational or reasonable basis to deny the permit. Clearfield's request for a stay of judgment was subsequently denied and this appeal followed.[2]

Before turning to the merits of the appeal, it is necessary to review both the proper procedure for judicial review of the city's action and the applicable standards of review.

## I. PROPER PROCEDURE FOR REVIEW

Judicial review of zoning decisions can be characterized as merely a variant of judicial review of administrative decision-making. 7 Rohan, *Zoning and Land Use Controls* § 52.01 (1986). Aside from that generalization, there is inconsistency in how the process of review occurs. This is a result not only of a divergence of practice concerning whether state administrative procedure acts govern the review of zoning decisions, but also of the nuances within the various zoning enabling acts by which state legislatures have delegated the authority to enact and enforce zoning ordinances to municipalities. Therefore, judicial review of local zoning or planning matters necessarily depends on the extent to which the state administrative procedure act is applicable, an interpretation of the enabling legislation, and the provisions of the pertinent local ordinance. *See id.*

### A. *Review pursuant to state administrative procedure act*

■ Utah's newly created and long overdue Administrative Procedures Act, Utah Code Ann. §§ 63–46b–1 to –21 (1987), does not apply to this case. Although the Utah Administrative Procedures Act became effective January 1, 1988, 1987 Utah Laws ch. 161, § 315, it does not apply to cases already pending at its effective date. *See Angell v. Board of Review*, 750 P.2d 611, 612 n. 2 (Utah Ct.App.1988). Moreover, unlike in some states, the Utah act applies only to state and not to local agencies.[3]

---

1. The motion referred to the following "reasons":

    Clearfield's responsiveness to the community and the County's special needs by four structured residential and residential-type facilities within the radius of one mile; and that 11% of the land would be designated to this particular type of structured residential use; and that to uphold the Clearfield master plan and zoning ordinance to minimize the changes of the characteristics of the neighborhood.

2. We are advised that, upon denial of the motion for stay, the county closed its transaction with Victor Smith, acquired the site, made such renovations as might have been necessary to adapt the large residence to the county's purpose, and has continuously operated the treatment facility for some two years now.

3. While some states have specifically made their administrative procedure acts applicable to local agencies, at least one state has achieved the same result through the interpretation of rules of procedure. *See, e.g., Board of County*

*See* Utah Code Ann. § 63–46b–1(1) (1987). The Utah act specifically excludes application to "any political subdivision of the state, or any administrative unit of a political subdivision of the state." Utah Code Ann. § 63–46b–2(1)(b) (1987).

### B. *Review pursuant to zoning statute*

■ Likewise, and contrary to the city's suggestion on appeal, Davis County was precluded from using the statutory avenue of appeal intended as the vehicle for review of zoning decisions, Utah Code Ann. § 10–9–15 (1986), since this case involves an application to the Planning Commission and an appeal to the City Council, rather than a decision of the Board of Adjustment. Section 10–9–15 provides, in relevant part:

> The city or any person aggrieved by any decision of the board of adjustment may have and maintain a plenary action for relief therefrom in any court of competent jurisdiction....

Utah Code Ann. § 10–9–15 (1987).

The city argues that Davis County did not follow the proper procedure for judicial review of the City Council's decision because Davis County should have commenced the kind of action contemplated by § 10–9–15 rather than seeking a writ of mandamus. The city cites the case of *Crist v. Mapleton City*, 28 Utah 2d 7, 497 P.2d 633 (1972), as authority for the proposition that mandamus is not a substitute for appeal. In *Crist*, the Utah Supreme Court held that when an applicant has appealed to a board of adjustment, mandamus is not available to compel issuance of a permit; the applicant must seek the "plain, speedy, and adequate remedy" of judicial review under § 10–9–15. 497 P.2d at 634.

In this case, however, Davis County was not in need of review of a board of adjustment decision. It was aggrieved by action of the City Council affirming the decision of the Planning Commission. There is no statutory recourse similar to § 10–9–15 for review of city council action, apparently

leaving the county with no recourse other than to obtain review by the traditional means of seeking an extraordinary writ or, more precisely, appropriate relief available where no other adequate remedy exists. *See* Utah R.Civ.P. 65B(a), (b)(3).

### C. *Review pursuant to ordinance*

Notwithstanding the unavailability of statutory review pursuant to § 10–9–15, the city claims that Davis County was nonetheless required to appeal as prescribed by Clearfield City ordinance. The section of the Clearfield City ordinance governing the issuance of conditional use permits, at least as reproduced in our record, provides that appeals from the Planning Commission must proceed to review by the City Council. Appeals from the city council must then be taken to a court of competent jurisdiction pursuant to a provision similar, but not identical, to, § 10–9–15. That ordinance provision provides, in relevant part, with our emphasis added:

> Any person aggrieved by or affected by any decision of the Board of Adjustment *or the City Council* may have and maintain a plenary action for relief therefrom in any court of competent jurisdiction....

■ While it is true that, if this provision were valid, the county should have commenced "a plenary action for relief" in the district court, the city cannot alter the scope and procedure for review required by § 10–9–15 by simply inserting the words "or the City Council" into its ordinance. Where a route of review is provided by a state statute, a municipality lacks the power to alter that scheme. *See, e.g., Cushing v. Smith*, 457 A.2d 816, 820 (Me.1983).

The Utah Supreme Court recently found a similar procedure invalid because it conflicted with Utah's enabling act, Utah Code Ann. §§ 10–9–1 to –18 (1986). *Chambers v. Smithfield City*, 714 P.2d 1133, 1137 (Utah 1986). The enabling act provides that the legislative body of a city, such as Clearfield's city council, has the right to

*Comm'rs v. Teton County Youth Servs., Inc.,* 652 P.2d 400, 416 (Wyo.1982). Assuming favorable experience with the Utah Administrative Proce-

dures Act, the Legislature may, in due course, wish to consider extending its application to local agencies.

regulate zoning, but in order to exercise that power, the legislative body *shall* provide for a board of adjustment to function as an appellate body for any person aggrieved by a zoning decision. 714 P.2d at 1136.

The Court in *Chambers* interpreted § 10–9–15 as expressing a clear legislative intent to vest the authority to grant variances solely with the board of adjustment. 714 P.2d at 1136. The ordinance at issue in *Chambers* required that variance requests be submitted to both the board of adjustment and the planning commission, with appeal to the city council. The Court found that the city's procedures conflicted with the enabling act by vesting the city council, rather than the board of adjustment, with final authority over the determination whether or not to grant variances from the zoning ordinances. 714 P.2d at 1137. *See Scherbel v. Salt Lake City Corp.*, 758 P.2d 897, 899, 81 Utah Adv.Rep. 15, 16 (Utah 1988) (board of adjustment rather than city council is appropriate body to hear zoning appeals from planning commission under council-mayor form of government).

While the Clearfield City ordinance differs from the one in *Chambers*, it nonetheless also fails to provide for final review of zoning matters by a board of adjustment as required by § 10–9–15 and endeavors to vest the City Council with the final determination of conditional use permits. A legislative body may act as a board of appeals only when the creation of a board of adjustment is not statutorily mandated.[4] *See* 7 Rohan, *Zoning and Land Use Controls* § 49.01[5] (1986) ("If the creation of a zon-

ing board is mandatory, a local legislative body cannot reserve unto itself the sole power to grant or deny variances."). *See also Scherbel v. Salt Lake City Corp.*, 758 P.2d at 899, 81 Utah Adv.Rep. at 16 ("the authority to resolve zoning disputes is properly an executive function rather than a legislative one").

Clearfield City cannot be heard to complain about the inappropriateness of the county's choice of procedure for obtaining judicial review in light of its own, flawed conditional use permit procedures. Simply put, Clearfield City imposed on the county a procedure inconsistent with that envisioned in the enabling act. Having done so, it cannot insist on the method of district court review envisioned in that act.[5]

■ Since the Utah Administrative Procedures Act does not apply to local agencies and this is not an appeal pursuant to § 10–9–15 nor any other statutorily-prescribed scheme, Davis County was entitled to seek judicial review through a procedure traditionally used where review is not otherwise provided for. Rule 65B of the Utah Rules of Civil Procedure recognizes that appropriate relief may be granted "where the relief sought is to compel any inferior tribunal, or any corporation, board or person to perform an act which the law specially enjoins as a duty resulting from an office...." Utah R.Civ.P. 65B(b)(3). Therefore, an action for extraordinary relief was the appropriate vehicle for obtaining review of the City Council's decision to uphold denial of the conditional use permit sought by Davis County.[6]

---

4. The enabling act for city zoning is different from the enabling act for county zoning. The county act makes the decision to appoint a board of adjustment discretionary with the county commission rather than mandatory as under the city enabling act. *Chambers v. Smithfield City,* 714 P.2d 1133, 1137 (Utah 1986).

5. The county might have premised its attack on the City Council's action on the ground that the council was not authorized to hear the zoning appeal. *See, e.g., Scherbel v. Salt Lake City Corp.,* 758 P.2d at 899, 81 Utah Adv.Rep. at 16. It did not do so. Nor does the city contend in this appeal that the county should have appealed to a body other than the City Council, a position it would in any event be estopped from

asserting. The city's point is that the City Council functioned as a kind of board of adjustment and that, therefore, judicial review of its decision should have been accomplished in the same way as review of board of adjustment decisions.

6. By either route, mandamus or review pursuant to the statute, the case would have ended up in district court. It may be that denominating the proceeding as "mandamus" or as a "plenary action" under § 10–9–15 is neither determinative nor "anything other than a technicality which did not adversely affect the rights of the parties." *Crist v. Mapleton City,* 28 Utah 2d 7, 497 P.2d 633, 636 (1972) (Crockett, J., dissent-

## II. STANDARDS OF REVIEW AND DEFERENCE

The unique procedural posture of this case results in some confusion over the applicable standard of review both at the trial court level and on appellate review. While the appeal is taken from an administrative decision, the case found its way to district court in the context of a petition for an extraordinary writ. Thus, the nature of review by the district court was a hybrid proceeding involving some elements of administrative review and some elements of an independent civil action. That is, the trial court did not limit its review to consideration of the record, as is typically the case in reviewing administrative decisions where a record is available, but heard two days of extensive testimony from various witnesses as is more typical of an independent civil action.

### A. *Trial Court Review of Administrative Decision*

Clearfield City argues that the trial court erred in handling review of a city council decision as, in effect, a trial de novo and that the court should have been limited to consideration of whether, on the record, the council's action was arbitrary and capricious and not supported by substantial evidence. The Utah Supreme Court recently addressed a similar argument in *Xanthos v. Board of Adjustment*, 685 P.2d 1032 (Utah 1984), which involved an appeal to the district court pursuant to § 10–9–15 from a decision by a board of adjustment denying a variance. After a bench trial, at which the judge heard evidence in addition to that adduced at the board hearing, the court reversed the board's decision and ordered the board to grant the variance. Salt Lake City argued, as Clearfield City argues in this case, that the court was limited to consideration of whether the board's action was arbitrary and capricious and not supported by substantial evidence.

The Utah Supreme Court defined the scope of review contemplated by the terms "plenary action" as used in § 10–9–15. "The nature and extent of the review depends on what happened below as reflected by a true record of the proceedings, viewed in the light of accepted due process requirements." *Id.* at 1034 (quoting *Denver & Rio Grande Western R. R. Co. v. Central Weber Sewer Improvement Dist.*, 4 Utah 2d 105, 287 P.2d 884, 887 (1955)). If the hearing had proceeded in accordance with due process requirements, the reviewing court must look only to the record "but where it had not or where there was nothing to review, the reviewing court must be allowed to get to the facts." *Id.* The Supreme Court concluded that the role of the trial court in reviewing the board's decision is to determine whether the action was so unreasonable as to be arbitrary and capricious, but "[i]n order to make that determination, the district court may take additional evidence so long as it is relevant to the issues that were raised and considered by the board." *Id.* at 1035. *See also Honn v. City of Coon Rapids*, 313 N.W.2d 409, 416 (Minn.1981); 3 Anderson, *American Law of Zoning* § 27.32 (1986) (a court reviewing a decision of a local zoning board may take additional evidence if necessary to aid in the fair disposition of the case). *Xanthos* involved the question of the proper standard of review under § 10–9–15, which is not the basis for this appeal as explained above. However, its reasoning applies at least as readily to an action commenced pursuant to Rule 65B to secure a writ.

■ Even though the record was perhaps more extensive in this case than is typical in zoning matters, we find the trial court was justified in receiving additional evidence for at least two reasons. First, the trial court was concerned about the secretive nature and lack of any record or minutes of the City Council's "pre-meeting." Second, notwithstanding Davis County's request, the Planning Commission refused to give its reasons for denying the permit and the City Council refused to en-

ing). The city apparently believes its decision would be entitled to more deference if reviewed under § 10–9–15 than in the context of a mandamus action. Of course, whatever minimal

benefit the county receives by virtue of its appeal being in the mandamus context is a direct consequence of the city's own questionable procedure for obtaining a conditional use permit.

ter formal findings in support of its decision. Thus, in order to determine whether the action taken by the City Council was so unreasonable as to be arbitrary and capricious, the trial court received additional evidence to ascertain what transpired at the pre-meeting and to discover the city's actual reasons for denying the permit.[7]

### B. Appellate Review of Trial Court Decision

Assuming, as we have concluded, that it was appropriate for the trial court to hear additional testimony, the city argues that this court is nonetheless precluded from giving deference to the trial court's decision. Indeed, it is often stated that an appellate court owes no particular deference to a trial court's prior review of particular agency action.[8] See, e.g., Technomedical Labs, Inc. v. Securities Div., 744 P.2d 320 (Utah Ct.App.1987). "When a lower court has reviewed the administrative decision and the court's judgment is challenged on appeal, we review the administrative decision just as if the appeal had come directly from the agency." Id. at 321 n. 1. See also Bennion v. Utah State Bd. of Oil, Gas & Mining, 675 P.2d 1135, 1139 (Utah 1983).

This doctrine, of course, makes sense only in the context of review of agency action on a record. The appellate court ordinarily gives no presumption of correctness to the lower court decision because the lower court's review of the administra-

tive record is not ordinarily more advantaged than the appellate court's review. Bennion v. Utah State Bd. of Oil, Gas & Mining, 675 P.2d at 1139. On the other hand, when the trial court hears testimony from witnesses, as in this case, "we are particularly mindful of the advantaged position of the trial court to hear, weigh and evaluate the testimony of the parties." J & M Const., Inc. v. Southam, 722 P.2d 779, 779 (Utah 1986). See also Jensen v. Brown, 639 P.2d 150, 152 (Utah 1981) (court is "mindful of the advantaged position of the trial judge who sees and hears the witness" and therefore "give[s] due deference to his decisions").

■ Therefore, insofar as the trial court's decision turns on the administrative record, we give no particular deference to the trial court. But insofar as it turns on the testimony of witnesses, we defer to the trial court's advantaged position.

### III. TRIAL COURT'S DECISION

The trial court concluded that the Planning Commission's action in denying the conditional use permit and the City Council's action in upholding the denial were arbitrary and capricious and without substantial basis in fact. The court also concluded that the Planning Commission and the City Council unconstitutionally applied the applicable provisions of the zoning ordinance.

---

7. We note that in taking additional evidence and making its detailed findings, the trial court made a fair and disciplined effort to understand the basis for the city's decision. In no sense did it venture beyond its role as the court was said to have done in Xanthos and decide the case "according to [its] notion of what was in the best interests of the citizens" of Clearfield City. Xanthos v. Board of Adjustment, 685 P.2d at 1035.

8. That notion has always been a bit of an overstatement. Even if not strictly required, deference is no doubt given where the trial court's analysis is illuminating. Cf. Zions First Nat'l Bank v. National Am. Title Ins. Co., 749 P.2d 651, 654 (Utah 1988) ("Although we may not defer to a trial court's conclusion on a legal question, we certainly may derive great benefit from the trial judge's views on the issue and may be persuaded by those views."). In any

case, the Utah practice of duplicative, two-tiered judicial review of agency action has been time-consuming and inefficient. The Utah Administrative Procedures Act wisely breaks from this approach. Informal agency action, where no record is made, will be reviewed in district court on a trial de novo basis, in connection with which a record will be generated. See Utah Code Ann. § 63-46b-15(1)(a) (1986). Appellate review would proceed on the record made in the trial court. Conversely, formal agency action, which generates a record, is reviewed directly by this court or by the Utah Supreme Court. See Utah Code Ann. § 63-46b-16(1) (1986). This approach leaves each level of court doing what it does best—trial courts receiving and evaluating testimony and appellate courts reviewing records and resolving legal issues.

### A. Lack of evidence supporting city's decision

In its memorandum decision, the trial court explained that the Planning Commission's refusal to furnish written findings, or at least provide the basis for its decision so that Davis County could intelligently respond on appeal to the City Council, tended to suggest there was no rational basis for the Planning Commission's decision. With regard to the City Council's decision, although the court carefully reviewed the verbatim transcript of the public meetings provided by Davis County, it found that "nowhere in the transcripts ... is there believable information or evidence on which the Clearfield City Council could have rationally believed that the proposed mental health facility would pose any special threat to Clearfield City's legitimate interest." Consequently, the trial court's decision, for the most part, turned on testimony received by the court over a two day period in an effort to ascertain what the basis for the city's decision actually was.

The court found that the pre-meeting held by the City Council on October 9, although "ostensibly" a public meeting, was not an open meeting, yet the merits of Davis County's application were discussed and council members obviously relied on information supplied in that meeting. The court also found that the maps presented and relied upon in the pre-meeting were arbitrarily drawn and were not presented or explained at the public meeting.

In its findings, the court reviewed the reasons suggested at trial for the council's denial of the permit and found that none were supported by the evidence. In response to the concern that the proposed facility would create a danger or nuisance because of its proximity to the junior high school, the court noted that neither the Davis County School District nor the junior high administrators appeared at the public hearings to oppose the proposed facility. Similarly, the police department made a presentation suggesting that crime would not increase in the area if the facility were permitted.

With regard to the concern over real estate values, the court found that no studies were made and no opinions were given by professional real estate appraisers nor was any credible evidence of reduced property values produced at the hearings. In a similar vein, two professional planners were employed by the city but neither voiced any objection to granting the application.

■ Even if the reasons given in the motion adopted by the council might otherwise be legally sufficient, see Note 1, supra, the denial of a permit is arbitrary when the reasons are without sufficient factual basis. See, e.g., C.R. Invs., Inc. v. Village of Shoreview, 304 N.W.2d 320 (Minn.1981). In Shoreview, several single-family homeowners objected to the use of land in their vicinity for construction of multiple dwellings. At the public meeting, they expressed concerns about traffic problems, reduced property values, and density. The court in Shoreview reviewed these reasons and concluded that the planning commission's stated reasons for denying the special use permit, an action which was upheld by the city council, did not have factual support in the "vague reservations expressed by either the single family owners or the commission members." Id. at 325. The court found the reasons did not justify denial of the permit "even though they would have been legally sufficient had the record demonstrated a factual basis for them." Id.

### B. "Public clamor"

Based on its review of the testimony, and the lack of any credible evidence in support of the City Council's articulated reasons for denying the application, the trial court found that the City Council's decision was based on "public clamor,"[9] which was not a legally sufficient basis for denying the permit. The court explained:

9. The clamor is typified by the curious action taken at the Planning Commission hearing, where citizens in attendance were asked to vote on the application. Only one person voted for the facility and all others in the audience voted against it.

Indeed, there is almost uniform public clamor when any mental health facility, halfway house, jail or prison is proposed. The public realizes the need for such facilities, but they should always be located somewhere else.... Citizen opposition is a consideration which must be weighed, but cannot be the sole basis for the decision to deny.

The Utah Supreme Court recognized the validity of the trial court's concern in *Thurston v. Cache County*, 626 P.2d 440 (Utah 1981). In *Thurston*, the Court, in upholding the Cache County Planning Commission's denial of conditional use permits to build residences in an agricultural area, acknowledged that, while there is no impropriety in the solicitation of or reliance on the advice of neighboring landowners, "the consent of neighboring landowners may not be made a criterion for the issuance or denial [of] a conditional use permit." *Id.* at 445.

In a case factually more similar to the instant one, the Wyoming Supreme Court stated that "[t]he opposition of neighbors is not one of the considerations to be taken into account" when determining whether to issue a development permit. *Board of County Comm'rs v. Teton County Youth Servs., Inc.*, 652 P.2d 400, 411 (Wyo.1982). In that case, the county commission denied an application for a development permit, submitted by Youth Services, to use an existing facility as an alternative residential treatment center for the care and treatment of juveniles in need of supervision or emotionally and socially handicapped. The Wyoming Supreme Court agreed with the trial court that the commission's decision had to be set aside since the commission found that neighbors opposed the proposed development and the court could not determine the weight the commission gave to such "unauthorized criteria" in making its decision. *Id.* at 411.

In another case involving judicial review of local action denying conditional use permits, *City of Barnum v. County of Carlton*, 386 N.W.2d 770, *affirmed on remand*, 394 N.W.2d 246 (Minn.Ct.App.1986), the City of Barnum sought a writ of manda-

mus to compel the county board to issue a conditional use permit to allow it to construct a wastewater treatment facility. The district court denied the writ and the city appealed. The Minnesota Court of Appeals found that Carlton County acted arbitrarily and capriciously in denying the city's application and reversed the district court and remanded with instructions to issue the writ of mandamus ordering the county board to issue the conditional use permit. 386 N.W.2d at 776. The court in *Barnum*, noting that the failure by the county board to make sufficient findings in support of its decision made the court's task of review "highly impractical" because "[t]here is no way to determine from the record ... what the county board's thinking was when it denied the conditional use permit," *id.* at 775, rejected the county's argument that its decision was based upon concerns aired by property owners at the public meeting. The court stated that though these sentiments may be weighed in a zoning decision, "they may not be the sole basis for granting or denying a given permit." *Id.* The court characterized the county's decision in these terms:

> Its decision appears to have been merely a response to public opposition. This is an insufficient basis upon which to deny a conditional use permit. A county must rely on facts, and not mere emotion or local opinion, in making such a decision.

*Id.* at 776. *Accord, Chanhassen Estates Residents Ass'n v. City of Chanhassen*, 342 N.W.2d 335, 340 (Minn.1984) ("[D]enial of a conditional use must be based on something more concrete than neighborhood opposition and expressions of concern for public safety and welfare.").

### C. *Conclusion*

While the reasons given by the Clearfield City Council for denying the permit might be legally sufficient if supported, the trial court was correct in concluding that the offered reasons are without factual basis in the record. What the court found to be the real reason for the action, "public clamor," is not an adequate legal basis for the city's decision. Therefore, we agree with the trial court that Clearfield

City acted arbitrarily and capriciously in denying the conditional use permit for reasons which either had no factual basis or were not legally sufficient. Because we find the decision arbitrary and capricious, we have no need to consider whether the city's ordinance was unconstitutional on its face or as applied.[10] Accordingly, we affirm the trial court's decision.

GREENWOOD and BILLINGS, JJ., concur.

---

**10.** As noted in section I(C) of this opinion, the city's ordinance is inconsistent with generally applicable state law, at least insofar as it vests in the City Council, rather than a board of adjustment, the final word on applications for conditional use permits. In that sense, the ordinance is unconstitutional under the supremacy clause contained in Utah Const. Art. XI, § 5. *See All-good v. Larson,* 545 P.2d 530, 532 (Utah 1976).