**Kirk W. DALL, Petitioner and Appellant,**

v.

**STATE of Utah, The Utah State Board of Pardons, and The Utah State Psychiatric Security Review Board, Respondents and Appellees.**

**No. 930722–CA.**

Court of Appeals of Utah.

Dec. 27, 1994.

Mark R. Moffat and Robert K. Heineman, Salt Lake City, for appellant.

James H. Beadles and Jan Graham, Salt Lake City, for appellees.

Before DAVIS, GREENWOOD and ORME, JJ.

## OPINION

ORME, Associate Presiding Judge:

Kirk W. Dall appeals the denial of his petition for an extraordinary writ, challenging the Psychiatric Security Review Board's decision to transfer him from the custody of the Utah State Hospital to the custody of the Board of Pardons. We reverse and remand.

## FACTS

On May 9, 1989, Dall pled guilty and mentally ill to one count of forcible sexual abuse and one count of kidnapping, both second degree felonies. Subsequently, the trial court sent defendant to the Utah State Hospital for a mental evaluation. On August 10, 1989, having reviewed the evidence presented at the sentencing hearing, the trial court sentenced Dall to two concurrent terms of one to fifteen years and ordered that he be hospitalized at the Utah State Hospital and placed under the jurisdiction of the Psychiatric Security Review Board (the PSRB).[1]

On December 17, 1990, the Utah State Hospital petitioned the PSRB to hold a hearing to determine whether it could remove Dall from the hospital and transfer custody over Dall to the Board of Pardons. In April 1991, after reviewing the testimony and medical records, the PSRB determined that Dall had received the "maximum benefit" from treatment at the hospital and transferred him to the jurisdiction of the Board of Pardons.[2]

On May 10, 1991, Dall filed a petition in the district court for extraordinary relief pursuant to the pertinent provisions of Rule 65B, Utah Rules of Civil Procedure, challenging the PSRB's determination that he had received the maximum benefit from treatment and should be transferred to the jurisdiction of the Board of Pardons. On June 3, 1991, Dall also filed an appeal with this court seeking our review of the PSRB's decision. The district court stayed Dall's transfer pending resolution of his requests for review of the PSRB's decision. Prior to any consideration of the merits of Dall's challenges, it was discovered that the PSRB's recording equipment had malfunctioned and a record of its hearing did not exist. Thus, we directed the PSRB to hold a new hearing.

---

1. At the time Dall committed his crime, at the time he pled guilty and mentally ill, and at the time he was sentenced, the transfer of mentally ill offenders from the State Hospital to the jurisdiction of the Board of Pardons was governed by Utah Code Ann. § 77–16–5 (1990), which stated:

(1) A person committed to the state hospital after sentence who has *sufficiently recovered* from his mental disease or defect shall be certified to the Board of Pardons by the clinical director.

Upon certification, jurisdiction over the person shall be transferred to the Board of Pardons and he shall be pardoned, paroled or confined in the state prison for the unexpired term for the offense as provided by law with credit for time served while confined at the hospital. The certification of the clinical director of the hospital shall specify with particularity the medical facts justifying his certification.

(2) The provisions of law and the rules and regulations promulgated pursuant thereto, regarding parole shall apply to persons paroled from the state hospital.

*Id.* (emphasis added). A different provision was in effect when Dall came before the Psychiatric Security Review Board. *See infra* note 2.

At the time Dall was committed to the jurisdiction of the PSRB, Utah Code Ann. § 77–38–2(6) (Supp.1990) provided for judicial review of the PSRB's decisions. However, effective March 13, 1990, the Legislature amended section 77–38–2(6) to provide for appeal of PSRB decisions only regarding transfer of persons found not guilty by reason of insanity. *See* Utah Code Ann. § 77–38–2(6) (Supp.1990), *as amended by* 1990 Utah Laws, ch. 183, § 53, ch. 306, §§ 14, 15, & 17 (repealed 1992).

2. At the time the PSRB transferred Dall to the jurisdiction and custody of the Board of Pardons, the standard for such transfers was governed by Utah Code Ann. § 77–16a–5(1), (2)(a) (Supp. 1990), which stated, in pertinent part:

With regard to mentally ill but not mentally retarded persons:

(1) Every six months, the Psychiatric Security Review Board shall review the condition of each person under its jurisdiction at the state hospital, to determine whether custody should be transferred to the Board of Pardons.

(2)(a) If at any time after commitment of a person to the hospital ... whose sentence has not expired, if the superintendent of the hospital, or his designee, is of the opinion that the person ... has reached *maximum benefit* from the programs at the hospital, the superintendent or his designee shall apply to the Psychiatric Security Review Board for a transfer of custody to the Board of Pardons.

*Id.* (emphasis added).

On June 28, 1991, the PSRB conducted a new hearing paralleling the previous hearing as closely as possible. Apparently as before, the State called no witnesses at the June 28 hearing, and Dall called a single witness, Dr. Phillip Washburn, the clinical director of the forensic unit at the Utah State Hospital. Dr. Washburn had evaluated and treated Dall during his hospital commitment. Dr. Washburn testified that Dall had not received the maximum benefit from treatment and that he must continue to receive some form of treatment for the rest of his life. Dr. Washburn further testified that Dall had reached a "plateau" in his treatment and was not progressing as rapidly as the hospital would like, but that Dall would continue to benefit from additional treatment at the hospital. Nonetheless, Dr. Washburn testified that with the limited resources available, the space occupied by Dall at the hospital could better be used by another individual.

Moreover, Dr. Washburn testified that even if one could remove the economic reality of limited resources, he would still not believe that the maximum benefit standard adopted by the Legislature, *see supra* note 2, is an appropriate method by which to measure the progress of chronically mentally ill patients. According to Dr. Washburn, the maximum benefit language either suggests a cure or, at the very least, implies completion of the patient's treatment. However, Dr. Washburn pointed out that Dall, like many other severely mentally ill psychiatric patients, will require ongoing treatment for the rest of his life.

Despite Dr. Washburn's testimony, on July 2, 1991, the PSRB again determined that Dall had received maximum benefit from the hospital's treatment programs and transferred custody over him to the Board of Pardons. On the same day, the PSRB entered its order directing that "Dall be discharged from the Utah State Hospital and that he be remanded to the custody and jurisdiction of the Utah State Board of Pardons." The order further directed that Dall remain in the custody of the State Hospital "[u]ntil such time as the Board of Pardons conducts a hearing and custody is assumed by the Board of Pardons."

Dall appealed the PSRB's decision to this court, but we dismissed the appeal for lack of jurisdiction.[3] In the absence of an opportunity for direct appeal, Dall sought review of the PSRB's decision in the district court through a petition for extraordinary writ.[4] *See* Utah R.Civ.P. 65B(b), (e). *See also Davis County v. Clearfield City,* 756 P.2d 704, 707 (Utah App.) (indicating review of agency decision available through "traditional means" of extraordinary writ where no right of appeal existed), *cert. denied,* 765 P.2d 1278 (Utah 1988); *Blaine Hudson Printing v. State Tax Comm'n,* 870 P.2d 291, 294 (Utah App.1994) (noting alternative opportunities for review of agency decision absent right of direct appeal). The district court held an evidentiary hearing on June 14, 1993. At this hearing, Dr. Verville, the superintendent of the State Hospital at the time Dall was transferred, testified as to the clinical standard employed by the hospital for assessing the transfer of mentally ill patients.[5] Dr. Verville stated that regardless

3. The Legislature exempted the PSRB from the provisions of the Utah Administrative Procedures Act, eliminating the statutory right of direct appeal from PSRB decisions. *See* Utah Code Ann. § 63-46b-1(2)(c) (1993). *See also supra* note 1.

4. Because the decisions of the PSRB are no longer subject to direct review, *see supra* notes 1 & 3, the petition for extraordinary relief presently before us is the only judicial review of the PSRB's actions that is available. Absent habeas corpus review, no means would exist to guaranty that actions taken by the PSRB were lawful. *Cf. Foote v. Board of Pardons,* 808 P.2d 734, 735 (Utah 1991) (holding that "habeas corpus review of the board of pardon's actions is available"); *Rawlings v. Holden,* 869 P.2d 958, 961 (Utah App.1994).

5. The scope of Dr. Verville's testimony, insofar as relevant to this appeal, was in defining the clinical standard and process by which a mentally ill offender was transferred from the hospital to the jurisdiction of the Board of Pardons. Dr. Verville testified that he was unaware, at the time Dall was transferred, of the legal standards governing the transfer of mentally ill offenders and that the hospital employed a clinical standard that he believed closely paralleled the legal standard of "maximum benefit" as he came to understand it. Dr. Verville testified that, as the hospital superintendent, he and the hospital's clinical director would evaluate the appropriateness of transferring a mentally ill patient from the hospital only after the patient's treating physician recommended that transfer was appropriate be-

of the change in statutory language governing the transfer of mentally ill prisoners subsequent to Dall's commitment in 1989, *see supra* notes 1 & 2, the hospital's practice remained constant—the hospital only discharged guilty and mentally ill offenders when the treating physician and hospital administrators determined the offender had received as much clinical service as could be of benefit to that particular offender. *See supra* note 5. Dr. Verville testified that, while he hoped that economic factors would not play a determinative role in the decision to transfer a mentally ill offender from the hospital to the prison, he was "sure" that economic constraint is one factor that the hospital always considers. Relying on this testimony, the trial court determined that the PSRB had not abused its discretion in deciding to transfer Dall to the Board of Pardons and denied Dall's petition for extraordinary relief.[6] Dall appeals.

### ISSUES

Dall challenges the PSRB's decision to transfer him to the Board of Pardons on numerous constitutional grounds. Specifically, Dall contends that under both the United States Constitution and the Utah Constitution, the PSRB's decision denied him his right to due process and compulsory process and financial assistance necessary to present his case, and violated the prohibitions against

ex post facto laws and cruel and unusual punishment.

In addition to these constitutional arguments, Dall argues that even if the "maximum benefit" standard applies to him, as the PSRB contends, the PSRB's determination that he had received the maximum benefit from treatment is not supported by the record and, indeed, is contrary to the testimony of the only witness who testified before the PSRB, thus making its decision unlawful. Because we agree with Dall that the record does not support the PSRB's conclusion that he received the maximum benefit available from his hospitalization, we conclude Dall is entitled to relief. Accordingly, we do not reach his constitutional challenges.[7]

### STANDARD OF REVIEW

When reviewing a trial court's decision to deny a petition for extraordinary relief in contexts like the instant one, we look at the underlying administrative proceeding as if the petition were brought directly to us, even though technically it is the trial court's decision, and not the decision of the administrative agency, that is being challenged. *Tolman v. Salt Lake County Attorney*, 818 P.2d 23, 26 (Utah App.1991). Under this standard, we accord no deference to the trial court's review of the administrative record, "which this court is just as capable of review-

cause the patient had "received all the possible forms of intervention that could be helpful to improve his condition." Dr. Verville's role was an administrative one—he either approved or denied the recommendation of the treating physician based on whether medication had been administered to the patient on a regular basis, whether such medication had stabilized the patient, whether various forms of intervention had been employed, and whether additional intervention was needed. If there was no reason to disagree with the recommendation of the treating physician, Dr. Verville forwarded the recommendation for transfer to the PSRB for a hearing.

Dr. Verville was not involved in Dall's treatment while he was a patient in the hospital and did not specifically review Dall's case or the recommendation to transfer Dall from the State Hospital to the Board of Pardons. Moreover, Dr. Verville did not participate in the hearings before the PSRB that specifically addressed Dall's transfer to the custody of the Board of

Pardons. Thus, Dr. Verville's testimony was not offered to the PSRB as a basis for its decision, and Dr. Verville was unable to offer his opinion to the trial court as to whether Dall had actually received the maximum benefit from the hospital's programs prior to being transferred.

6. By the same order, the trial court lifted the stay it had previously imposed and, as of August 25, 1993, custody over Dall was officially transferred to the Board of Pardons. Dall's subsequent postjudgment motions for a stay pending appeal were denied and defendant is currently incarcerated in the general population at the Utah State Prison.

7. As a general rule, "courts should avoid reaching constitutional issues if the case can be decided on other grounds. In other words, courts should decide cases on nonconstitutional grounds where possible, including common law or statutory grounds." *West v. Thomson Newspapers*, 872 P.2d 999, 1004 (Utah 1994) (citations omitted). *Accord Chase v. Industrial Comm'n*, 872 P.2d 475, 478 n. 4 (Utah App.1994).

ing."[8] *Id.* *See Bennion v. State Bd. of Oil, Gas & Mining,* 675 P.2d 1135, 1139 (Utah 1983).

■ However, if the trial court heard evidence other than that contained in the administrative record and based its decision, in part, on that evidence, we defer to the trial court's findings of fact extrapolated from that evidence. *Davis County v. Clearfield City,* 756 P.2d 704, 710 (Utah App.), *cert. denied,* 765 P.2d 1278 (Utah 1988). "Therefore, insofar as the trial court's decision turns on the administrative record, we give no particular deference to the trial court. But insofar as it turns on the testimony of witnesses, we defer to the trial court's advantaged position." *Id.*

■ In the instant case, neither party claims any factual findings made by the trial court were based on testimony or evidence presented to it during the hearing to consider the petition for extraordinary writ. Rather, the testimony presented at the evidentiary hearing, insofar as relevant to this appeal, focused on the practical effect—or more precisely, non-effect—that the adoption of the maximum benefit standard had on the hospital's policy concerning discharging guilty but mentally ill patients. *See supra* note 5. Such testimony implicates the interpretation of a statute, which is a question of law that we review for correctness, affording no particular deference to the trial court. *Krauss v. Utah State Dep't of Transp.,* 852 P.2d 1014, 1017 (Utah App.), *cert. denied,* 862 P.2d 1356 (Utah 1993). *See Ward v. Richfield City,* 798 P.2d 757, 759 (Utah 1990); *Lounsbury v. Capel,* 836 P.2d 188, 192 (Utah App.), *cert. denied,* 843 P.2d 1042 (Utah 1992). Moreover, the testimony the trial court heard was not offered at the PSRB hearing and, thus, was not a factor in the PSRB's decision, the legality of which is now before us.

8. That we give *no* deference to the trial court's analysis is "a bit of an overstatement." *Davis County v. Clearfield City,* 756 P.2d 704, 710 n. 8 (Utah App.), *cert. denied,* 765 P.2d 1278 (Utah 1988). Though we are not required to defer to the trial court, we often " 'derive great benefit from the trial judge's views on the issue and may be persuaded by those views.' " *Id.* (quoting *Zions First Nat'l Bank v. National Am. Title Ins. Co.,* 749 P.2d 651, 654 (Utah 1988)).

## ANALYSIS

■ The plain language of Utah Code Ann. § 77–16a–5 (Supp.1990) provided that [i]f the superintendent of the hospital, or his designee, is of the opinion that the person ... has reached *maximum benefit* from the programs at the hospital, the superintendent or his designee shall apply to the Psychiatric Security Review Board for a transfer of custody to the Board of Pardons.[9]

*Id.* (emphasis added). Assuming that each term in the statute was used advisedly, we interpret and apply the terms "maximum benefit" according to their usually accepted meaning, unless such reading results in an application that is "unreasonably confused, inoperable, [ ] or in blatant contradiction of the express purpose of the statute." *Morton Int'l, Inc. v. State Tax Comm'n,* 814 P.2d 581, 590 (Utah 1991). *Accord Savage Indus., Inc. v. State Tax Comm'n,* 811 P.2d 664, 670 (Utah 1991).

■■ The word "maximum," as it is commonly understood, is defined as "the greatest quantity or value attainable in a given case." *Webster's Third New International Dictionary* 1396 (1986). Nowhere in the definition of the term "maximum" is there anything to suggest that its meaning can connote something less than the highest degree. In common parlance, on a scale of one to ten, the maximum is ten; on a scale of one to one hundred, the maximum is one hundred. Furthermore, a reading of the statute does not intimate a unique meaning of "maximum benefit," nor is the phrase confusing or contradictory. Therefore, the PSRB legally transferred Dall only if the superintendent of the hospital, or his designee, evaluated Dall and concluded that he had received the greatest attainable benefit the hospital could offer him.[10]

9. Utah Code Ann. § 77–16a–5 (Supp.1990) was repealed effective July 1, 1992. The "maximum benefit" standard is currently codified in Utah Code Ann. § 77–16a–203(3)(a) (Supp.1994).

10. The PSRB contends that a literal interpretation of the term "maximum benefit" would create an unworkable standard that would virtually preclude transfer of mentally ill offenders to the prison because most, if not all, mentally ill of-

■ We must assume that the Legislature, in creating the standard governing the transfer of mentally ill offenders, chose each word advisedly. We will not substitute other conceivable definitions when the language of a statute is plain. Thus, when the Legislature chose to require that a mentally ill offender receive *maximum benefit* from the hospital's programs prior to being transferred to the prison, we assume it meant just that. It is with this definition in mind that we consider whether the PSRB's determination was supported by the record and was therefore lawful.

■ In the instant case, the testimony of Dr. Washburn, the sole witness to testify before the PSRB, clearly indicated that Dall had not yet received the maximum benefit available from the State Hospital, although Dr. Washburn believed Dall's transfer was nonetheless appropriate as a matter of sound hospital administration. Thus, the record does not support the PSRB's determination that Dall had received the maximum benefit available from treatment at the hospital prior to being transferred to the custody of the Board of Pardons. Without a valid determination of "maximum benefit," the PSRB lacked the authority necessary to transfer Dall to the Board of Pardons. Therefore, we can only conclude that the PSRB's decision to transfer Dall to the Board of Pardons was illegal and that his resulting confinement at the state prison is unlawful.

## CONCLUSION

We reverse the trial court's denial of Dall's petition for extraordinary relief, and remand to the trial court for such further proceeding as may now be appropriate and for the fashioning of appropriate relief.

DAVIS and GREENWOOD, JJ., concur.

fenders could benefit more from confinement in a hospital than from incarceration in a prison. The PSRB argues that a more workable policy would be to allow transfer of a mentally ill offender when that person has reached a level of stabilized mental health, thereby freeing up room in the State Hospital for another patient who may more greatly benefit from the hospital's services. While we tend to agree that incorporating a cost/benefit analysis into the decision to transfer mentally ill offenders may make for sound policy, we are confined to interpreting the laws as the Legislature has seen fit to write them. Under the express terms of the statute, the Legislature has chosen to require that, as a prerequisite to transferring a mentally ill offender from the hospital to the prison, that person must re-

ceive the *maximum benefit* attainable from the hospital's programs. *See* Utah Code Ann. §§ 77–16a–5 (Supp.1990), 77–16a–203(3)(a) (Supp. 1994). This may well represent a legislative mandate that the State Hospital do business differently than it has done in the past or in a manner which is at odds with established clinical approaches. But contrary to Dr. Washburn and Dr. Verville—both of whom testified the hospital was not approaching its determinations regarding the transfer of mentally ill offenders any differently under the new legislative standard than it had done before—we presume the Legislature would not have bothered to change the applicable standard if it meant the old standard to continue to apply.