**SECURITIES AND EXCHANGE COMMISSION, Appellant,**

v.

**DATRONICS ENGINEERS, INC., et al.,**
**Appellees.**

**No. 72–2240.**

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1973.

Decided July 27, 1973.

As Modified on Denial of Rehearing and Rehearing En Banc Sept. 28, 1973.

Certiorari Denied April 15, 1974.
See 94 S.Ct. 1936.

Jacob H. Stillman, Asst. Gen. Counsel, Securities and Exchange Commission, (Walter P. North, Acting Gen. Counsel, Frederic T. Spindel, Atty., and Dennis

R. Surprenant, Securities and Exchange Commission on brief), for appellant.

Paul N. Sameth and Isadore B. Katz, Silver Spring, Md. (Jules Fink on brief), for appellee, Datronics Engineers, Inc.

Sylman I. Euzent, pro se.

John T. Gauthier, pro se.

Harry Adelberg, Baltimore, Md., on brief for appellee, Irving Newirth.

Before BRYAN, Senior Circuit Judge, and FIELD and WIDENER, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

The Securities and Exchange Commission in enforcement of the Securities Act of 1933, § 20(b), 15 U.S.C. § 77t(b), and the Securities Exchange Act of 1934, § 21(e), 15 U.S.C. § 78u(e), sought a preliminary injunction to restrain Datronics Engineers, Inc., its officers and agents, as well as related corporations, from continuing in alleged violation of the registration and antifraud provisions of the Acts. The breaches are said to have been committed in the sale of unregistered securities, § 5 of the 1933 Act, 15 U.S.C. § 77e, and by the employment of false representations in their sale, § 10(b) of the 1934 Act, 15 U.S.C. § 78j, and Rule 10b–5 of the Commission, 17 CFR 240.10b–5.[1]

Summary judgment went for the defendants, and the Commission appeals. We reverse.

Specifically, the complaint charged transgressions of the statutes by Datronics, assisted by the individual defendants, in declaring, and effectuating through the use of the mails, "spin-offs" to and among its stockholders of the unregistered shares of stock owned by Datronics in other corporations. With exceptions to be noted, and since the decision on appeal rests on a motion for summary judgment, there is no substantial dispute on the facts. Datronics was engaged in the construction of communications towers. Its capital stock was held by 1000 shareholders and was actively traded on the market. All of the spin-offs occurred within a period of 13 months—from November 1, 1968 to December 31, 1969—and the spun-off stock was that of nine corporations, three of which were wholly owned subsidiaries of

---

1. Section 5 of the Securities Act of 1933, 15 U.S.C.

" § 77e. Prohibitions relating to interstate commerce and the mails

"(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

*　　*　　*　　*　　*

"(2) to carry or cause to be carried through the mails . . . any such security for the purpose of sale or for delivery after sale".

Section 10 of the Securities Exchange Act, 15 U.S.C. § 78j:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

*　　*　　*　　*　　*

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

*　　*　　*　　*　　*

"Rule 10b–5—Employment of Manipulative and Deceptive Devices

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud,

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

Datronics and six were independent corporations.[2]

The pattern[3] of the spin-offs in each instance was this: Without any business purpose of its own, Datronics would enter into an agreement with the principals of a private company. The agreement provided for the organization by Datronics of a new corporation, or the utilization of one of Datronics' subsidiaries, and the merger of the private company into the new or subsidiary corporation. It stipulated that the principals of the private company would receive the majority interest in the merger-corporation. The remainder of the stock of the corporation would be delivered to, or retained by, Datronics for a nominal sum per share. Part of it would be applied to the payment of the services of Datronics in the organization and administration of the proposed spin-off, and to Datronics' counsel for legal services in the transaction. Datronics was bound by each of the nine agreements to distribute among its shareholders the rest of the stock.

Before such distribution, however, Datronics reserved for itself approximately one-third of the shares. Admittedly, none of the newly acquired stock was ever registered; its distribution and the dissemination of the false representations were accomplished by use of the mails.

■ I. Primarily, in our judgment each of these spin-offs violated § 5 of the Securities Act, supra footnote 1, in that Datronics caused to be carried through the mails an unregistered security "for the purpose of sale or for delivery after sale". Datronics was actually an issuer, or at least a co-issuer, and not exempted from § 5 by § 4(1) of the Act, 15 U.S.C. § 77d as "any person other than an issuer".

Datronics and the other appellees contend, and the District Court concluded, that this type of transaction was not a sale. The argument is that it was no more than a dividend parceled out to stockholders from its portfolio of investments. A noteworthy difference here, however, is that each distribution was an obligation. Their contention also loses sight of the definition of "sale" contained in § 2 of the 1933 Act, 15 U.S.C. § 77b. As pertinent here that definition is as follows:

> "When used in this subchapter, unless the context otherwise requires—
>
> \*   \*   \*   \*   \*   \*
>
> "(3) The term 'sale' or 'sell' shall include every contract of sale or *disposition* of a security or interest in a security, *for value.* The term 'offer to sell', 'offer for sale', or 'offer' shall include every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, *for value.* . . ." (Accent added.)

■ As the term "sale" includes a "disposition of a security", the dissemination of the new stock among Datronics' stockholders was a sale. However, the appellees urged, and the District Court held, that this disposition was not a statutory sale because it was not "for value", as demanded by the definition. Here, again, we find error. Cf. Securities and Exchange Commission v. Harwyn Industries Corp., 326 F.Supp. 943, 954 (S.D.N.Y.1971). Value accrued to Datronics in several ways. First, a market for the stock was created by its transfer to so many new assignees—at least 1000, some of whom were stockbroker-dealers, residing in various States. Sales by them followed at once—the District Judge noting that "[i]n each instance dealing promptly began in the spun-off shares". This result redounded

---

2. The subsidiaries were Multi-Media Engineering, Inc.; Compu-Reader, Inc.; Data-Call Systems, Inc., and the remaining six independent corporations were Hosco, Inc.; Bun & Burger International, Inc.; Daypac Industries, Inc.; Associated Data & Management Corporation; Cyclo-Shine Corporation, and The Laand Corporation.

3. In one or two instances, there was some variation in these mechanics, but there was no deviation in principle from the plan.

to the benefit not only of Datronics but, as well, to its officers and agents who had received some of the spun-off stock as compensation for legal or other services to the spin-off corporations. Likewise, the stock retained by Datronics was thereby given an added increment of value. The record discloses that in fact the stock, both that disseminated and that kept by Datronics, did appreciate substantially after the distributions.

This spurious creation of a market whether intentional or incidental constituted a breach of the securities statutes. Each of the issuers by this wide spread of its stock became a publicly held corporation. In this process and in subsequent sales the investing public was not afforded the protection intended by the statutes. Further, the market and the public character of the spun-off stock were fired and fanned by the issuance of shareholder letters announcing future spin-offs, and by information statements sent out to the shareholders.

■ Moreover, we think that Datronics was an underwriter within the meaning of the 1933 Act. Hence its transactions were covered by the prohibitions, and were not within the exemptions, of the Act. §§ 3(a)(1) and 4(1) of the 1933 Act, 15 U.S.C. §§ 77c, 77d. By definition, the term underwriter "means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking . . . ." § 2(11) of the 1933 Act, 15 U.S.C. § 77b(11). Clearly, in these transactions the merger-corporation was an issuer; Datronics was a purchaser as well as a co-issuer; and the purchase was made with a view to the distribution of the stock, as commanded by Datronics' preacquisition agreements. By this underwriter distribution Datronics violated § 5 of the 1933 Act—sale of unregistered securities.

II. The Commission charged a violation by Datronics and its officers of § 10(b) of the 1934 Act, 15 U.S.C. § 78j,

and of Rule 10b–5. The breach occurred through untrue factual statements incident to the spin-offs. The District Court quite justifiably found that "in certain instances misleading statements were made by" Datronics and the individual defendants. This finding was reiterated by the District Court in discussing the announcements which were made to Datronics' stockholders with each spin-off.

A common explanation of the distribution to its stockholders was that it was "impractical" for Datronics itself to run the merger-corporations. Of course, as the minority stockholder, Datronics could not do so. The District Court termed the explanation false and a "pure subterfuge".

■ Since, however, the District Court was of the opinion that the distribution of the stock among Datronics' shareholders was not a sale, it held that the "misleading statements" were not outlawed by § 10(b) or by Commission Rule 10b–5. These provisions condemn such misrepresentations only when they are used "in connection with the purchase or sale of any security". Inasmuch as we believe there was a sale in each spin-off, we cannot agree with the District Court's determination. See Securities and Exchange Comm'n v. Texas Gulf Sulphur Co., 401 F.2d 833, 860 (2 Cir. 1968 en banc), cert. denied, Coates v. Securities and Exchange Commission, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).

■ This was one of the trial court's reasons for not granting an injunction. Other grounds were that there was no indication that in the future the defendants might violate the statutes in suit; that the officers and agents who formulated and executed the spin-offs were no longer connected with Datronics; and that the present officers and agents assured the District Court that no more spin-offs of this kind would be indulged in. Moreover, the Court felt that by its interpretative releases the Commission had led Datronics and its codefendants to believe that spin-offs were not proscribed by these statutes. The Court

was also persuaded by the failure of the Commission to act more vigilantly. While the issuance of an injunction is discretionary, it seems to us that overall, notwithstanding these considerations, the facts in this case warranted the grant of an injunction. See United States v. Parke, Davis & Co., 362 U.S. 29, 47, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960).

Finally, a summary of the activities of Datronics is conclusively convincing that they violated the statutes in question, and should now be restrained to prevent recurrences. To begin with, it is noteworthy that they were not isolated or minimal transgressions. There were, to repeat, nine sales and distributions of unregistered stocks in little more than a year. They were huge in volume, ranging from 75,000 to 900,000 shares. The distribution was not confined to a small number of recipients; nor was it incidental to Datronics' corporate functions. Concededly, none of the several distributions had a business purpose. In short, the spin-offs seemingly constituted the major operation of Datronics at the time.

We cannot read the releases or letters of the Commission or its abstention from earlier suits as evincing express or implied approval of the repeated and large-scale violations as are here. The releases do not approve or condone a campaign, such as Datronics engaged in, to develop means and opportunities to promote spin-offs. Indeed, one of Datronics' agents was a "finder" of opportunities for spin-offs.

The dismissal order of the District Court will be vacated, and the cause remanded for the entry of a judgment sustaining the appellant's motion for the preliminary injunction sought in its complaint.

Vacated with directions.

WIDENER, Circuit Judge (concurring):

I concur in the issuance of the temporary injunction because I believe the existence of the agreements between Datronics and the various companies whose stock found its way to the market through Datronics, on account of the agreements, with no apparent business purpose which has been expressed to us, other than the creation of a public market for the stock, points to the fact that Datronics may have been a willing catspaw in a device or scheme to avoid the statute. For this reason, I believe there is a probable right and a probable danger, and that the right may be defeated unless the injunction is issued. The considerable weight which should be given to the need of protection to the plaintiff is satisfied by the need of protection by the public from possible injury resulting from the violation of the statute. Sinclair Refining Company v. Midland Oil Company, 55 F.2d 42 (4th Cir. 1932).

With so much of the opinion as holds that Datronics may be an underwriter within the meaning of the statute, 15 U.S.C. § 77b(11), I agree. The word "distribution" as used in the statute has not been defined to require value. XXIX Md.Law Rev., 320, 332.

I note that the opinion of the court may not be broadly enough read to cast doubt upon the legitimate business acquisition of one company by another, or the legitimate business merger of two companies, although a market for securities spun off as a consequence of the transfer may be thereby created; for, as the opinion of the court recites, the market created by Datronics' spin-offs was spurious, doubtless meaning illegitimate, however actual it might have been, and Datronics caused the consummation of the transactions complained of without any business purpose of its own.

In my opinion, the root of this case is the pre-existing agreement between Datronics and the various companies whose stocks it spun off with no apparent purpose other than the incidental benefits of creation of a public market for the stock. If the transactions were with a view to creating a public market for the stock which the various companies could not otherwise do absent compliance with

the statute, then I think Datronics may be held to be an underwriter. The value requirement of a sale, 15 U.S.C. § 77b(3), for the issuer (15 U.S.C. § 77b(4)) did receive value, I think, may be satisfied by the exchange of stock of the various companies with Datronics or by the exchange of stock of the various companies for services of Datronics. See also 58 Va.L.Rev. 1451.

### OPINION ON MOTIONS TO RECONSIDER

PER CURIAM:

On review of the petition of Datronics Engineers, Inc., appellee herein, for reconsideration of the opinion filed on July 27, 1973 in this case, the Court denies a rehearing except as to that part of the opinion which remands the cause to the District Court for the entry of the preliminary injunction sought in the complaint of the Securities and Exchange Commission.

In regard to the injunction the Court notes the stressed reassurance, in the petition and the accompanying affidavit, of the owners of a majority of Datronics Engineers, Inc.'s stock that no more spin-offs would be undertaken, that the majority stockholders will not vote their stock in the future for any spin-off transactions or to elect as a director any person who would so vote, that the principals involved in the challenged spin-offs are no longer associated with Datronics, and that a merger of Datronics with another firm is in contemplation. In these circumstances the Court apprehends that its direction to the District Court to issue an injunction might have a punitive effect, which was not intended, and disturb the proposed merger.

Therefore, the Court rescinds so much of its initial opinion as requires the trial court to award a preliminary injunction, and in lieu thereof the cause is remanded for a determination by the District Court, consistently with the remainder of the opinion, of whether an injunction should or should not be issued restraining Datronics in respect to such transactions as the opinion of the Court declares to be impermissible. Nothing herein shall be construed as prohibiting or directing the issuance of an injunction, and the District Court is authorized to consider, if it sees fit, the bona fides of the merger asserted to be in prospect.

In view of the foregoing decision upon the petition of Datronics Engineers, the Court is satisfied that nothing would be gained by extending the time for the appellees, Sylman I. Euzent and John T. Gauthier to file requests for a rehearing, and their requests are denied.

No judge in regular active service or a member of the panel that rendered the instant decision on appeal having requested a vote on the appellees' suggestion for a rehearing in banc, such a rehearing is denied. Although ordinarily a rehearing will not be granted in the absence of a request by the court for an answer to the petition for rehearing, instantly we deemed an answer unnecessary. See FRAP 40(a).