# UNITED STATES COURT OF APPEALS

# FOR THE TENTH CIRCUIT

DAVE SHELDON,

        Plaintiff-Appellant,

v.

JAY VERMONTY; CARMEN
VERMONTY; POWER PHONE, INC.,
including all Directors and Officers;
NOAH STEINBERG; GERSHON
TANNENBAUM; ENRIQUE R.
CARRION, Dr.; TMC AGROWORLD,
INC., including all Directors and
Officers; MONTE CRISTI GROUP,
including all Directors and Officers;
MANHATTAN TRANSFER
REGISTRAR COMPANY, including
all Directors and Officers; HECTOR
CRUZ; JACK SAVAGE, individually
and as Director and Officer and all
Directors and Officers individually,
aka J. Wesley Savage; PRINCETON
RESEARCH,

        Defendants-Appellees,

   and

CHARLES SCHWAB & CO., INC.;
OLDE DISCOUNT CORPORATION;
PRINCIPAL FINANCIAL,

        Defendants.

Nos. 99-3202 & 99-3389

ORDER
Filed December 4, 2000

---

Before **TACHA** , **EBEL** , and **LUCERO** , Circuit Judges.

---

This matter is before the court on appellees' petition for rehearing of this court's order and judgment filed October 30, 2000. The members of the hearing panel have considered appellees' arguments regarding the merits of this court's disposition of this appeal, and conclude that the original disposition was correct. Therefore, the petition for rehearing is denied on the merits.

The hearing panel, however, issues a revised order and judgment which modifies certain language of the filed order and judgment. The primary change is that the quotation from Appellant's Appendix at 96 has been changed to a quotation from Appellant's Appendix at 47. <u>See</u> slip op. at 8. A copy of the corrected order and judgment is attached.

Entered for the Court,
Patrick Fisher, Clerk of Court


By:
Keith Nelson
Deputy Court

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 30 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DAVE SHELDON,

      Plaintiff-Appellant,

v.

JAY VERMONTY; CARMEN
VERMONTY; POWER PHONE, INC.,
including all Directors and Officers;
NOAH STEINBERG; GERSHON
TANNENBAUM; ENRIQUE R.
CARRION, Dr.; TMC AGROWORLD,
INC., including all Directors and
Officers; MONTE CRISTI GROUP,
including all Directors and Officers;
MANHATTAN TRANSFER
REGISTRAR COMPANY, including
all Directors and Officers; HECTOR
CRUZ; JACK SAVAGE, individually
and as Director and Officer and all
Directors and Officers individually,
aka J. Wesley Savage; PRINCETON
RESEARCH,

      Defendants-Appellees,

   and

CHARLES SCHWAB & CO., INC.;
OLDE DISCOUNT CORPORATION;
PRINCIPAL FINANCIAL,

      Defendants.

Nos. 99-3202 & 99-3389
(D.C. No. 98-CV-2277-JWL)
(D. Kan.)

**ORDER AND JUDGMENT**

Before **TACHA** , **EBEL** , and **LUCERO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' requests for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

**No. 99-3202**

Plaintiff-appellant Dave Sheldon filed this action asserting that various defendants violated provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, and the Kansas Securities Act in the course of selling shares of Power Phone, Inc., both before and after its failed merger with TMC Agroworld, Inc. Sheldon also alleged liability under common-law theories of fraud, breach of fiduciary duty, civil conspiracy, unjust enrichment, and negligent misrepresentation. For several reasons, the district court ruled that Sheldon's complaint failed to state an adequate federal-question or diversity claim upon

This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

-2-

which relief could be granted. Accordingly, it granted the motion to dismiss filed by defendants Jay Vermonty, Carmen Vermonty, Gershon Tannenbaum, and Hector Cruz. Later, the court denied Sheldon's request for reconsideration and motion to amend his complaint pursuant to Fed. R. Civ. P. 15(a). It then directed entry of judgment in accordance with Fed. R. Civ. P. 54(b). Sheldon now appeals pursuant to 28 U.S.C. § 1291. We affirm in part, and reverse and remand in part.

## BACKGROUND [1]

Sheldon's securities claims arise from his serial purchases of stock in Power Phone, Inc. from July 1, 1996 through April 21, 1997. Sheldon alleges that he invested in reliance on false information disseminated primarily by defendant Jay Vermonty, Power Phone's investor relations representative, through press releases, asset statements, internet messages, and individual contacts with investors. Sheldon also alleges that several other defendants were involved in the

---

[1]     Sheldon filed three complaints: essentially all of the claims in the first complaint were dismissed, with leave to amend, for failure to comply with the pleading requirements of Rules 8 and 9(b) of the Federal Rules of Civil Procedure. The Second Amended Complaint added additional defendants. The Third Amended Complaint is the subject of this appeal and is referred to in this order and judgment as "the Complaint." In making sense of the jumbled factual allegations in that filing, we have the advantage of the district court's distillation of Sheldon's claims. The district court performed a yeoman's task in determining the gist of the case, rather than simply describing the Complaint as incomprehensible and dismissing it under Rule 8(a).     See Carpenter v. Williams, 86 F.3d 1015, 1016 (10th Cir. 1996).

misrepresentations.  Carrion, Reyes, and Tannenbaum, who were officers of Power Phone, allegedly corroborated Vermonty's statements so that they, like Vermonty, would benefit through stock transactions.  Carmen Vermonty, Jay Vermonty's wife, was supposedly an investor-relations representative for Power Phone.  Jack Savage allegedly drafted and distributed false Princeton Research reports in return for payment.  Although the Complaint alleges that defendant Hector Cruz served as the transfer agent for Power Phone shares, it does not connect him with any statements  made on behalf of Power Phone.

The alleged misrepresentations were that: (1) Power Phone was to merge with TMC Agroworld, Inc., a company with $50-$75 million in documented assets, no liabilities, and an internationally-known expert in free trade zones, defendant Carrion, at its head; (2) Power Phone had acquired the Monte Cristi Lumber Company (with $19-$20 million in assets and $200 million in sales); [2] (3) the Power Phone/TMC merger was completed, resulting in the addition of  $74.3 million in assets; (4) Power Phone owned the Santa Elena meat-packing plant in Argentina, with assets of $74 million and sales over $100 million, and would be opening it in a matter of months; (5)  Power Phone had a consummated contract to deliver two million metric tons of urea from Argentina; and (6) generally Power

---

[2]     We note that Sheldon's filings spell "Monte Cristi" in several different ways.  In this Order and Judgment we use the "Monte Cristi" spelling.

-4-

Phone had appreciable revenues, assets, and confirmed contractual arrangements. The Complaint provides specific time frames for each of the alleged misstatements.

According to the Complaint, Sheldon eventually learned that none of the statements circulated about Power Phone was true. Specifically, he alleges that the company did not own the Santa Elena meat-packing plant, a facility which "had been closed for years and [] would require millions of dollars to take it over from Argentina's government, and, no one had been hired to work there." Appellant's App. at 31. The Complaint further alleges that the "Monte Cristi Lumber [Company] did not exist." Id. at 33. In addition, Sheldon asserts that Power Phone was not properly registered under the federal and Kansas securities laws and that its sole Securities Exchange Commission filing is "full of false information." Id. at 38.

The stock price allegedly declined from $3.50 per share in July 1996 to $.87 in December 1996, and to $.05 at the time the Complaint was filed. Sheldon asserts that he suffered an investment loss of $38,722.89.

## DISCUSSION

This court reviews de novo a district court's decision to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted or pursuant to Fed. R. Civ. P. 9(b) for failure to plead

fraud with particularity. See Grossman v. Novell, Inc., 120 F.3d 1112, 1118 & n.5 (10th Cir. 1997). "We accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party." Maher v. Durango Metals, Inc., 144 F.3d.1302, 1304 (10th Cir. 1998). The dismissal will be upheld only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

As a preliminary matter, we note that the Complaint is bereft of legally-significant allegations as to defendant Cruz. Without any further discussion, we affirm the district court's dismissal of all claims against Mr. Cruz. The remainder of our analysis applies to defendants Jay Vermonty, Carmen Vermonty, and Tannenbaum.

### Claims under the Securities Act of 1933

Count one of the Complaint asserts violations of § 12 of the Securities Act of 1933 (the Securities Act), codified at 15 U.S.C. § 77l(a)(1) and (a)(2). The Securities Act primarily regulates one corporate event: the initial distribution of securities. See Gustafson v. Alloyd Co., 513 U.S. 561, 570-72 (1995). The Act requires issuing companies to make a number of company and transaction-specific disclosures and to deliver this information to potential investors. See id. In this

case, Sheldon alleges that the event requiring compliance with the Securities Act was the merger between Power Phone and TMC Agroworld.

Section 12(2) provides, in pertinent part, that any person who offers or sells a security by use of the mails or interstate facilities by means of a prospectus or oral communication which includes any untrue statement or omission of a material fact is liable for damages to the immediate purchaser of the security. [3] The Supreme Court has "indicated in dicta that only purchasers in the initial public offering could bring suit pursuant to section 12(2)." Joseph v. Wiles, 223 F.3d 1155, 1160-61 (10th Cir. 2000) (citing Gustafson, 513 U.S. at 571-72)). The district court dismissed Sheldon's § 12(2) claim for failure to plead sufficient facts to support an inference that the Power Phone/TMC merger was required to be registered pursuant to § 5 of the Act, 15 U.S.C. § 77e, or that the sale of stock subsequent to the merger amounted to an initial public offering. In his Complaint, Sheldon alleged that the defendants "failed to make a proper '33 Act

---

[3]     As this court has stated,

> Section 12 claims are commonly referred to as either § 12(1) or § 12(2) claims. In 1995, however, Congress added another subsection to § 12. *See* Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, § 105, 109 Stat. 737, 757 (codified at 15 U.S.C. § 77l ). Therefore, § 12(1) and § 12(2) claims are now technically § 12(a)(1) and §12(a)(2) claims.

Maher v. Durango Metals, Inc., 144 F.3d 1302, 1303 n. 1 (10th Cir. 1998).

registration for the initial public offering of the 'merger' between TMC and the 'Shell' of [Power Phone] as required for this specific situation (Merger; Shell) when no legitimate exemption applied. . . ." Appellant's App. at 47.

These allegations bear some similarity to the factual circumstances of SEC v. Datronics Engineers, Inc., 490 F.2d 250 (4th Cir. 1973), in which the defendant, a public corporation, acquired a number of privately-held, target companies in merger transactions. A subsidiary of the defendant would merge with the target company, with the target company disappearing and the subsidiary surviving the merger. Both the shareholder-principals of the disappearing target and Datronics received stock in the surviving subsidiary. After the merger, Datronics distributed some of its shares to its shareholders as a dividend. In this way, formerly privately-held companies became publicly owned without going through a registered public offering. See id. at 253-54. The court was concerned that, contrary to the purposes of the Securities Act, a public trading market would develop in the securities of these newly-public companies for which no public information was yet available. See id. The court therefore held that Datronics' activities violated the Securities Act. See id. at 254.

We make no determination as to whether the Datronics rationale is applicable here or whether the merger actually resulted in an initial public offering of stock. We note, however, that a "court should be especially reluctant

-8-

to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 341-43 (2d ed. 1990). We conclude that plaintiff's § 12(a)(2) allegations concerning the merger between Power Phone (a public company alleged to be a shell having little or no assets) and TMC Agroworld are sufficient to survive defendants' motion to dismiss. Accordingly, the district court's dismissal of the claim was premature.

Sheldon also makes a claim under § 12(1) of the Securities Act, 15 U.S.C. § 77l(a)(1), which provides a right of action for the immediate purchaser to rescind the sale and demand a return of the purchase price against an individual who offered or sold unregistered securities required to be registered. The purchaser must bring the action "within one year after the violation upon which it is based" and, in no event, "more than three years after the security was bona fide offered to the public." 15 U.S.C. § 77m.

Here, the district court dismissed the § 12(1) claim as time-barred. The court determined that Sheldon's last purchase of stock occurred in April of 1997, but that this action not filed until June 1998, more than one year later. On the facts of this case, we agree with the district court's ruling. A § 12(a)(1) claim

"contemplates a buyer-seller relationship not unlike traditional contractual privity." Pinter v. Dahl , 486 U.S. 622, 642 (1988). The allegations of misrepresentations made within the required one-year time frame, but which did not result in a sale, are irrelevant here. Accordingly, the § 12(1) claim was properly dismissed.

### Claims under the Securities Exchange Act of 1934

Count V of Sheldon's Complaint alleges violations of the Securities Exchange Act of 1934 (the Exchange Act). To state a claim under § 10(b) of the Exchange Act, codified at 15 U.S.C. § 78j(b), "a plaintiff must establish that, in connection with the purchase or sale of a security, the defendant, with scienter, made a false representation of a material fact upon which the plaintiff justifiably relied to his or her detriment. Wiles , 223 F.3d at 1161 (quotations and citations omitted).

In this case, the district court dismissed Sheldon's claim for failure to plead the fraud element of a § 10(b) claim with particularity, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Specifically, the district court found the complaint wanting in allegations as to "how or why the alleged misrepresentations were false," Appellant's App. at 259; whether the "allegedly false statements were known to be false when made," id. at 260, and "defendants' intent to deceive, or 'scienter.'" id. at 262-63.

In reviewing a dismissal under Rule 9(b), we confine our analysis to the text of the complaint.     See Koch v. Koch Indus., Inc.   , 203 F.3d 1202, 1236 (10th Cir.),   cert denied , 68 U.S.L.W. 3023 (U.S. Oct. 10, 2000) (No. 00-28) and cert. denied , 69 U.S.L.W. 3128 (U.S. Oct. 10, 2000) (No. 00-175).        [4]

> Rule 9(b) provides, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. . . ."    More specifically, this court requires a complaint alleging fraud to set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.  Rule 9(b)'s purpose is to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based. . . ."

Id. (further quotations and citations omitted).  Rule 9(b) further provides that "malice, intent, knowledge, and other conditions of mind of a person may be averred generally."

After a review of the complaint, we conclude that it adequately met Rule 9(b) requirements.  First, as the district court acknowledged, the Complaint alleged misrepresentations with background information as to date, speaker, and the medium of communication.     See Appellant's App. at 259.  Second, certain of the alleged misrepresentations involved profitable expectations arising from an

---

[4]     Accordingly, we disregard the content of papers that Sheldon filed with the court subsequent to his filing of the Third Amended Complaint.  We note, however, that the documents denominated Exhibit 1-A through Exhibit 6-D, which were filed with the initial Complaint and referenced in the Third Amended Complaint as Exhibits 1- through 6, are appropriately included in the record on appeal.

unowned and inoperable meat-packing plant, a nonexistent lumber company, and fabricated contracts. Accepting Sheldon's allegations as true, these are patently false statements of present fact. The district court erred in determining they were "'mere conclusory allegations of falsity'" and in characterizing them as "'fraud by hindsight.'" Appellant's App. at 259 (quoting Grossman, 120 F.3d at 1124). Third, the allegations of scienter were sufficient. In securities fraud cases, although speculation and conclusory allegations will not suffice, great specificity is not required if the plaintiff alleges enough facts to support "a strong inference of fraudulent intent." Stevelman v. Alias Research Inc., 174 F.3d 79, 84 (2d Cir. 1999).

At this procedural juncture, the allegations of fraud need no further explanation. Although Sheldon's complaint could have been more artfully crafted, he should be permitted to pursue his § 10(b) claim. The district court's dismissal of the claim was inappropriate.

Sheldon also alleges violations of § 12 and § 13 of the Exchange Act. See 15 U.S.C. § 78l (setting out registration requirements for securities); § 78m (setting out, among other things, subsequent reporting requirements). The Complaint does not provide sufficient allegations to demonstrate which of these provisions, if any, apply to any of the defendants. Furthermore, on appeal, Sheldon makes no comprehensible argument supporting his theory that he is

entitled to pursue a private right of action under these provisions.    See generally  ,

Lora C. Siegler,   Availability of Implied Private Action for Violation of § 13 of

Securities Exchange Act of 1934   , 110 A.L.R. Fed. 758 (1992).  The district court

properly dismissed this claim, as alleged in count II of the Complaint.          [5]

## Controlling Person Liability Claims

In counts III and IV of the Complaint, Sheldon claims violations of § 15 of

the Securities Act, 15 U.S.C. § 77o, and § 20(a) of the Exchange Act, 15 U.S.C.

§ 78t.  Under both these provisions, "a person who controls a party that commits

a violation of the securities laws may be held jointly and severally liable with the

primary violator."    Maher , 144 F.3d at 1304-05. "[T]o state a prima facie case of

control person liability, the plaintiff must establish (1) a primary violation of the

securities laws and (2) 'control' over the primary violator by the alleged

controlling person."    Id. at 1305.

The district court summarily dismissed Sheldon's control person claims for

failure to state a primary violation.  As discussed above, we have concluded that

certain of his claims of primary securities violations should have survived

defendants' motion to dismiss.  On remand, the district court should allow the

concomitant control person claims to proceed.

---

[5]    To the extent Sheldon seeks to make claims under any other provisions of
the Exchange Act, these claims are inadequately pled and properly dismissed.

### Diversity Claims

Sheldon has asserted numerous diversity claims. The district court dismissed his claims under the Kansas Securities Act, along with claims of common law fraud and common law conspiracy with prejudice, essentially for failure to plead fraud with particularity. The court dismissed state-law claims of unjust enrichment and negligent misrepresentation without prejudice. For the same reasons that we determine Sheldon's federal-law fraud claims were improperly dismissed, we reverse the district court's dismissal of these state-law claims. We agree with the district court, however, that Sheldon failed to allege any facts from which a fiduciary duty could be discerned. See Denison State Bank v. Madeira, 640 P.2d 1235, 1241 (Kan. 1982) (stating existence of fiduciary relationship depends upon whether "there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence"). Dismissal of the breach of fiduciary duty claim was appropriate.

### Denial of Leave to File an Amended Complaint

Finally, Sheldon asserts that the district court erred in dismissing his complaint without affording him leave to amend. Whether to allow amendment of a complaint is a matter left to the district court's discretion. See Trotter v

-14-

Regents of the Univ. of N.M., 219 F.3d 1179, 1185 (10th Cir. 2000). In light of the poor quality of Sheldon's pleadings, the district court did not abuse its discretion in denying a request to amend. Because we are remanding certain claims to the district court for further proceedings, however, the issue of amendment as to these claims is best left to the district court's discretion on remand.

## CONCLUSION

In sum, we reverse the dismissal of the following claims against defendants Jay Vermonty, Carmen Vermonty, and Gershon Tannenbaum: § 12(2) Security Act claims; § 10(b) Exchange Act claims; controlling person liability claims under the Securities Act and the Exchange Act; Kansas Securities Act claims; and common-law fraud, conspiracy, and unjust enrichment claims. These claims are remanded for further proceedings consistent with this order and judgment. The dismissal of Sheldon's remaining claims is affirmed, including the dismissal of all claims against defendant Hector Cruz.

We regret the significant expenditure of judicial resources caused by the poor quality of Sheldon's advocacy. Although we have determined that some of Sheldon's claims are adequate to survive defendants' motion to dismiss, we caution Sheldon that, in the absence of significant improvement in the quality of his filings, his entire case may be vulnerable to a subsequent legal challenge.

-15-

**No. 99-3389**

The claims made in this case against defendants Power Phone, Inc., Noah Steinberg, Dr. Enrique R. Carrion, TMC Agroworld, Inc., The Monte Cristi Group, Manhattan Transfer Registrar Company, Princeton Research, Inc., and Jack Savage are identical to those discussed above in Case No. 99-3202. The district court dismissed all claims against these defendants for the same reasons and in the same manner as they were dismissed against defendants Jay Vermonty, Carmen Vermonty, Tannenbaum, and Cruz.    See Appellant's App. at 10.

We affirm in part, and reverse and remand in part, consistent with our resolution of case No. 99-3202. Issues concerning sufficiency of service and other arguments unique to individual defendants may be dealt with on remand.

Entered for the Court


David M. Ebel
Circuit Judge

-16-